COMMONWEALTH *vs.* ELMER TURNER.

Plymouth. Oct. 20. — Nov. 23, 1887. C. ALLEN, J., absent.

A captive fox is an "animal" within the Pub. Sts. c. 207, § 53.

A person who lets loose a captive fox to be hunted by dogs may be convicted of subjecting the fox to unnecessary suffering, under the Pub. Sts. c. 207, § 53.

A complaint alleged that the defendant had the custody of a fox, and knowingly and wilfully permitted the fox to be subjected to unnecessary suffering, by turning the fox loose to be hunted by dogs, in consequence of which the fox was hunted by dogs, and thereby subjected to unnecessary suffering. The evidence was that the defendant, in the presence of a number of men with dogs, let the fox loose within two rods of a piece of woods; that the fox ran into the woods, and was at once lost sight of; and that five minutes afterwards the dogs were let loose and ran after the fox; and there was no evidence that they were seen again that day. There was also evidence that, half an hour after the fox was released, a fox was found dead in the woods, a quarter of a mile away, with his side torn open. *Held*, that the evidence was sufficient to warrant the conviction of the defendant.

A formal defect in a complaint cannot be availed of for the first time in the Superior Court on appeal.

COMPLAINT, alleging that the defendant, on April 7, 1887, at Rockland, "was the person having the charge and custody of a certain animal, to wit, a fox, and did then and there, knowingly and wilfully, permit the said fox to be subjected to unnecessary suffering, by then and there, knowingly and wilfully, turning

the said fox loose, to be hunted by divers dogs, in consequence of which turning loose of the said fox, as aforesaid, the said fox was hunted by divers dogs, and thereby subjected to unnecessary suffering as aforesaid."

At the trial in the Superior Court, on appeal, before the jury were empanelled, the defendant moved to quash the complaint, because there was no offence set forth therein known to the laws of this Commonwealth, and because the offence intended to be charged therein was not fully, plainly, and substantially set forth. *Thompson,* J., overruled the motion.

At the trial, the government offered evidence tending to show that the defendant, on April 7, 1887, on Beech Hill, so called, in the town of Rockland, having the charge and custody of a fox, let the same loose; that at this time there were persons, to the number of ten or twelve, present with dogs, which they held by chains or cords fastened to their collars; that the defendant, before that day, said he was going to have a fox-hunt on that day, and was called upon by an agent of the Society for the Prevention of Cruelty to Animals, and informed that he would be prosecuted if he had the fox-hunt, and the defendant promised said agent that he would not take the fox there. It was also in evidence that, at the time the defendant let the fox loose, he forbade those having dogs letting loose their dogs. It appeared that the fox was let loose within two rods of the woods upon Beech Hill, which cover many acres of heavy growth of timber and wood, with thick underbrush; that the fox immediately ran into the woods upon his release, and was at once lost sight of in the woods; that, about five minutes after the release of the fox, those present having dogs, or some of them, let them loose, and they ran after the fox into the woods; and there was no evidence that they were seen again that day.

There was evidence that, in about half an hour after the fox was released by the defendant, a fox was found dead in the woods, with his side torn open, about one fourth of a mile from the place where the one was released by the defendant.

The defendant asked the judge to rule that the evidence was not sufficient to warrant the jury in convicting the defendant. The judge declined to rule as requested, and submitted the case to the jury, under instructions not excepted to. The

jury returned a verdict of guilty; and the defendant alleged exceptions.

*L. A. Cook & W. J. Coughlan*, for the defendant. 1. The complaint sets forth no offence known to the laws of this Commonwealth.

"The common law warrants the hunting of ravenous beasts of prey, as badgers and foxes, because the destroying such creatures is said to be profitable to the public." 3 Bl. Com. 213. *Geush* v. *Mynns*, Cro. Jac. 321. *Gundry* v. *Feltham*, 1 T. R. 334.

The Rev. Sts. *c.* 54, § 1, authorized and encouraged the destruction of foxes, and allowed a bounty of fifty cents per head for them. And by § 3 towns were authorized to raise money to encourage the destruction of foxes "and any other noxious animals whatever." By the Pub. Sts. *c.* 27, § 10, towns may raise money to encourage the destruction of noxious animals. As the law countenances the killing of foxes and allows towns to offer bounties for their destruction, killing them by a lawful method is no offence. Hunting is the proper and lawful method by which to kill foxes. 3 Bl. Com. 214.

The common law right to hunt foxes still prevails, unless controlled by statute law, and there is no statute law restricting or affecting that right in this Commonwealth. The St. of 1886, *c.* 276, does not apply to foxes.

If hunting a fox is not an offence, *a fortiori* turning a fox loose to be hunted is no offence.

That § 53 of *c.* 207 of the Pub. Sts., under which this complaint was made, does not apply to wild or noxious animals, is evident from the wording of the section itself, and from the provision of § 56, in regard to the care of animals found in the custody of the person arrested.

2. The offence intended to be charged is not fully, plainly, and substantially set forth. There is no allegation that the defendant permitted the fox to be subjected to unnecessary torture or cruelty of any kind. It is not enough to allege "unnecessary suffering." If it were, every person who fishes with hook and line might be convicted of cruelty to animals. There is no allegation as to the time when "the said fox was hunted by divers dogs." There is no allegation that at the time "the

said fox was hunted by divers dogs, and thereby subjected to unnecessary suffering," the fox was in the charge or custody of the defendant.

3. The court should have instructed the jury that the evidence was not sufficient to warrant the jury in convicting the defendant. There was no evidence that the fox was turned loose by the defendant to be hunted, the evidence showing that, when the defendant turned the fox loose, he expressly forbade those having dogs letting loose their dogs. There was no evidence that the defendant permitted the fox to be subjected to unnecessary suffering, or that he had any control over the fox at the time the alleged unnecessary suffering took place. There was no evidence of unnecessary suffering on the part of the fox. And there was no evidence that the fox found dead was the fox liberated by the defendant.

*A. J. Waterman*, Attorney General, for the Commonwealth.

W. ALLEN, J. The Pub. Sts. *c.* 207, § 53, provide that " Every owner, possessor, or person having the charge or custody of an animal, who cruelly drives or works it when unfit for labor, or cruelly abandons it, or carries it or causes it to be carried in or upon a vehicle, or otherwise, in an unnecessarily cruel or inhuman manner, or knowingly and wilfully authorizes or permits it to be subjected to unnecessary torture, suffering, or cruelty of any kind, shall be punished," &c. The complaint alleges that the defendant, at a certain time and place, " was the person having the charge and custody of a certain animal, to wit, a fox, and did then and there, knowingly and wilfully, permit the said fox to be subjected to unnecessary suffering" by turning it loose to be hunted by dogs, whereby it was hunted, and "subjected to unnecessary suffering."

The defendant excepted to the refusal of the court to rule that the evidence was not sufficient to warrant a conviction. The evidence tended to prove that the defendant let a fox loose from his custody in the presence of several dogs; that the fox ran into a thick wood, and disappeared; that about five minutes afterwards the dogs were let loose, and pursued the fox, and caught it and mangled it. The jury might have found that the fox was let loose by the defendant to be hunted by the dogs, and that the dogs were procured by him and were let loose by

his direction in order that they should hunt the fox. The evidence is sufficient to prove these facts; the question is whether these facts constitute or prove the offence described in the statute.

It is objected that the statute does not include noxious animals; that there is no evidence that the fox was subjected to unnecessary suffering; and that there is no evidence that it was subjected to any suffering by the defendant, or while it was in the charge or custody of the defendant.

The word " animal " must be held to include wild and noxious animals, unless the purpose of the statute or the context indicate a limited meaning. There is nothing in the general purpose and intent of the statute that would prevent it from including all animals, within the common meaning of that word. The statute does not define an offence against the rights of property in animals, nor against the rights of the animals that are in a sense protected by it. The offence is against the public morals, which the commission of cruel and barbarous acts tends to corrupt. See *Commonwealth* v. *Tilton*, 8 Met. 232. It is as obnoxious to the reason of the statute wantonly to torture a wild animal, held in subjection by force, as to torture a tame animal.

The history and context of the statute show that all brute animals are intended. The Gen. Sts. *c.* 165, § 41, reënacting the Rev. Sts. *c.* 130, § 22, and in force until the St. of 1868, *c.* 212, was enacted, provided that " Whoever cruelly beats or tortures any horse, ox, or other animal, whether belonging to himself or another, shall be punished," &c. The St. of 1868, *c.* 212, contained particular provisions, which are substantially found in the Public Statutes. Section 1 provided for punishing " whoever shall overdrive, overload, overwork, torture, torment, deprive of necessary sustenance, cruelly beat, mutilate, or kill, or cause or procure " to be so treated " any horse, ox, or other animal, and whoever having the charge or custody of any such animal " shall unnecessarily fail to provide for it proper sustenance and shelter. Section 2 related to the owner or person having the charge or custody of " any horse, ox, or other animal," who permits it to be subjected to unnecessary torture or cruelty. Section 3 related to working or abandoning cruelly a disabled " horse, mule, or other animal." Section 4 was a general provision in

regard to the transportation of " any animal." Sections 5-7 related to the transportation by railroad companies of " cattle, sheep, swine, or other animals." Under this statute it might have been contended that § 2 did not include wild or noxious animals ; but the statute was repealed the next year, and the St. of 1869, c. 344, enacted in place of it, the first two sections of which were in the form in which they appear in the Pub. Sts. c. 207, §§ 52, 53. These two sections include the substance of the first four sections of the St. of 1868. Section 3 of the St. of 1869 included §§ 5-7 of the St. of 1868, relating to transportation on railroads. The St. of 1869 nowhere designated any particular animal, or species, but uniformly used the words "any animal" or " animals." Section 6 provided that " In this act the word ' animal' or ' animals' shall be held to include all brute creatures." This provision is not reënacted in the Public Statutes, apparently for the same reason that the provision immediately following it in the same section, that the words " owner," " person," and " whoever" should include corporations, was not reenacted, — because it was unnecessary. The word " animal," in its common acceptation, includes all irrational beings. It was used in that sense in the St. of 1869, and it is not conceivable that the Legislature intended to give a different meaning to the word in the reënactment of that statute in the Public Statutes.

The statute does not require either the allegation or proof of torture or cruelty, except as involved in unnecessary suffering, knowingly and wilfully permitted. It is argued that the fox is a noxious animal, which man may lawfully kill ; that hunting it with dogs is a proper mode of killing it ; and that therefore the suffering inflicted by that mode of killing is not " unnecessary " within the meaning of the statute. The statute does not apply to foxes in their natural free condition, but only when they are in the dominion and custody of man. The right to kill a captive fox does not involve the right to inflict unnecessary suffering upon it in the manner of its death, any more than the right to kill a domestic animal involves the right to inflict unnecessary suffering upon it, or cruelly to kill it. It cannot be said, as matter of law, that throwing a captive fox among dogs, to be mangled and torn by them, is not exposing it to unnecessary suffering.

It is argued that there was not sufficient evidence to prove that the fox was in the custody or charge of the defendant when the suffering was inflicted upon it. It is not necessary to consider whether there was evidence of suffering from fear when the fox was in the custody of the defendant in the presence of the dogs, because we have no doubt that, by letting loose the fox for the purpose of being hunted by the dogs, the defendant permitted it to be hunted and permitted it to be subjected to all the suffering which it endured, and which naturally followed its being hunted in pursuance of that purpose. It was the act of the defendant while he had the custody of the fox that put it within the power of the dogs, and it is immaterial that they were restrained for five minutes before starting in fresh pursuit.

The objections to the complaint, which are not involved in the questions already considered, are for formal defects, of which the defendant could avail himself only by taking the objection before judgment in the District Court. Pub. Sts. c. 214, § 25. *Commonwealth* v. *Brigham*, 108 Mass. 457.

*Exceptions overruled.*