## WATERS v. THE PEOPLE.

23   33
o32  323

CRIMINAL LAW—CRUELTY TO ANIMALS—DOVE SHOOTING.

The killing of doves as they are released from a trap merely to improve skill in marksmanship, or for sport and amusement, though without specific intent to inflict pain or torture, is within the inhibition of the statute, and punishable.

*Error to the County Court of El Paso County.*

Messrs. RHETT & JONES and Messrs. WELLS, TAYLOR & TAYLOR, for plaintiff in error.

THE ATTORNEY GENERAL and Mr. J. C. HELM, for the People.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

This prosecution, instituted by the Humane Society, before a justice of the peace of El Paso county, where the plaintiff in error (defendant below) was found guilty and sentenced to pay a fine, resulted in a conviction and a fine in the county court of that county in the trial upon defendant's appeal. To this latter judgment the defendant prosecutes his writ of error in this court.

In the county court, by an agreement of parties, the cause was submitted to the decision of the court, without a jury, upon this agreed statement of facts :

" The defendant was at the time of the matter complained of in this case a member of what is known as the ' County Club,' the same being an organization of gentlemen, for the purpose of amusement, and its operations were carried on in El Paso county, Colorado.

" That on or about the 12th day of January, 1895, the defendant, together with other members of said club, owned forty (40) live doves, which they had obtained and kept in confinement for the purpose of using them as targets to shoot

at for their amusement; that at said time the doves were placed in traps singly and released therefrom, and then and there shot by the defendant as targets, for sport and amusement of himself and other members of the club; that some of the doves were shot and killed outright by defendant, while some were wounded and then captured and immediately killed by persons employed for that purpose; others shot by defendant escaped apparently unhurt; it was impossible to know whether all were unhurt or not, or whether they were seriously injured or not; that the wounding of said doves was not for the purpose of inflicting pain or to torture the same thereby, but resulted from want of skill, the purpose of the defendant being then and there to kill the birds outright; that the doves which were killed outright or wounded, and then captured and killed, were subsequently used as food by defendant and others."

The validity of the judgment below depends upon the construction of the following provisions of our statute:

"Every person who * * * tortures, torments, * * * or needlessly mutilates or kills * * * any animal, or causes or procures it to be done, * * * shall, upon conviction, be punished," etc. Mills' Ann. Stats., sec. 104.

"In this act the word 'animal' shall be held to include every living dumb creature; the words 'torture,' 'torment' and 'cruelty' shall be held to include every act, omission or neglect whereby unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue when there is a reasonable remedy or relief * * *." Mills' Ann. Stats., sec. 117.

While this controversy is real, and the prosecution was instituted by the Humane Society in good faith, counsel for the people and the defendant, both in the court below and here, with the sole desire to obtain a decision upon the legal proposition involved, have, with commendable accord, eliminated all matters the consideration of which might tend to embarrass or obscure the one vital question in the case. It is proper further to remark that the plaintiff in error is not

chargeable with moral delinquency, or with malicious intent wantonly to violate a law of the land ; but, rather, as a law-abiding citizen, he has purposely done the act complained of in order to furnish a test case wherein may be determined his controverted right, and that of his associates, to shoot live birds from a trap for sport and amusement.

At the common law the act done would not be a crime or a misdemeanor. If it is such now, it is because of our statute. As an abstract question, men of equal refinement and intelligence, either because of a difference in taste or training, or in their surroundings and occupations, might well differ as to the moral obliquity of the act of shooting live doves as they were released from a trap. The scholarly ascetic, whose chief pleasures are found in the library, or the man whose life is devoted to the welfare of the lower animals, might suffer excruciating pain if such an act was committed in his presence; while the sportsman, whose recreations are gunning and fishing, might look with pleasure upon what, to him, was "an ancient and honorable pastime."

What is a popular diversion, or a harmless amusement, cannot always be accurately determined. That which was so considered in the decade past may not be so regarded to-day, and that which is so to-day may be tabooed, as such, in the near future ; and so men equally conscientious, intelligent and law-abiding, may, not only at different times, but during the same period of time, differ as to these questions.

It is of common knowledge that within the past few years, as incident to the progress of civilization, and as the direct outgrowth of that tender solicitude for the brute creation which keeps pace with man's increased knowledge of their life and habits, laws, such as the one under consideration, have been enacted by the various states having the common object of protecting these dumb creatures from ill treatment by man. Their aim is not only to protect these animals, but to conserve public morals, both of which are undoubtedly proper subjects of legislation. With these general objects all right-minded people sympathize. There may be, however, and are,

radical differences of opinion as to the extent to which such legislation ought to go.

With the policy or wisdom of such enactments we have nothing to do. Our duty, and our only concern, is to give proper effect to such legislation, and to interpret or construe its provisions in the light of the object which the general assembly had in view when the law was passed in response to the demand of an enlightened public sentiment. We have been much aided by the learned counsel in their briefs and by their oral arguments, and by the authorities which their research has discovered. The cases in point are *Commonwealth v. Lewis*, 140 Pa. St. 261 ; *The State v. Bogardus*, 4 Mo. App. 215 ; *Commonwealth v. Turner*, 145 Mass. 296 ; *State v. Porter*, 112 N. C. 887. Other authorities bearing upon this statute are *Ford v. Wiley*, 23 Queen's Bench Div. 203 ; *Grise v. The State*, 37 Ark. 456 ; *Hodge v. The State*, 11 B. J. Lea (Tenn.), 528.

The Pennsylvania statute (Laws of Penn. 1869, p. 22) is: " Any person who shall * * * wantonly or cruelly illtreat * * * any animal," shall be punished. The Missouri statute (Laws of 1874, 112) is: " If any person shall * * * torture, torment, * * * needlessly mutilate or kill * * * any living creature, he shall be punished," etc. The Massachusetts statute (Public Statutes, chap. 207, sec. 53) is: " Every owner * * * or person having charge or custody of an animal who * * * knowingly and willfully authorizes or permits it to be subjected to unnecessary torture, suffering or cruelty of any kind, shall be punished," etc. The North Carolina Code (sec. 2482) is: " If any person shall willfully * * * torture, torment, * * * or needlessly mutilate or kill * * * any * * * animal," etc.

In the case before the Pennsylvania court the special verdict of the jury was that the defendant was a member of a gun club which held pigeon shooting matches for a test of skill of marksmanship. At one of these matches, for said purpose, the defendant with a gun fired upon pigeons liberated from a trap, and killed one and wounded another. The

wounded bird alighted upon a tree, when it was soon killed
by a member of the club, according to the prevailing custom,
and the two pigeons thus killed were then sold for food, as
the rule of the club provided.  Upon these facts the court
held that the case was not within the statute.  The object of
the defendant being to acquire skill and perfect himself in
shooting on the wing, the fact that in such exercise he wounded,
but did not kill, one of the birds, was held not to constitute
the act an unlawful, wanton or cruel shooting or wounding.
The learned chief justice who wrote the opinion concludes
by saying: "We do not say there might not be a violation
of the act at a shooting match, but, in our view, the facts
found by the jury do not bring this case within it."

So far as we are advised, the Missouri statute has not been
before the supreme court of that state, but in the case cited
*supra* the St. Louis court of appeals has passed upon it.  The
facts were that as a man threw up pigeons, two at a time, the
defendant shot and killed them in the air with a gun, to show
his skill, and the pigeons so killed were eaten as food.  The
court, speaking by Hayden, J., held that the pigeons were
not "needlessly or unnecessarily" killed, but that the kill-
ing, done in the indulgence of a healthful recreation and
during "an exercise tending to promote strength, bodily agil-
ity and courage," cannot be considered as a violation of the
statute.  The court refers to and emphasizes the fact that
there was "no mutilation or anything approaching to it."
What would have been the decision of the court had there
been in that case, as there was here, a wounding and mutila-
ting of a number of the birds, we can only conjecture.  Upon
a rehearing, Lewis, P. J., said that the test of judicial inter-
pretation of the statute was what application of the descrip-
tive words employed was intended by the legislature.  While
the learned judge found no moral justification for the acts
charged in the general truth that the policy of a good govern-
ment was not to suppress innocent manly exercise, neverthe-
less he could not believe that it was within the legislative
contemplation by an indefinite prohibition to interfere with

pigeon shooting from traps, which, for so long a time, had been identified with a mere popular diversion that was not considered needless. These are the only cases cited by plaintiff in error which support his construction of our statute.

It will be observed that the Pennsylvania statute is not so broad as ours, and contains no prohibition against needlessly mutilating or torturing, as does our statute, and is aimed only at wanton and cruel ill treatment. Had it, in these particulars, contained provisions like or similar to ours, and had the facts been the same as in the case at bar, the court might have considered the statute violated.

The Missouri statute in its specific inhibitions is very much like ours,—substantially the same,—and were the facts of the *Bogardus Case*, and the one under consideration the same, the former would be on all fours with this, and a precedent precisely in point; but as there was no mutilation of the pigeons, as in the case at bar, we are justified in the inference that the decision might have been different, as the court called special attention to the fact that there was nothing approaching to a mutilation of the birds.

In the *Turner Case, supra*, the defendant had charge of a fox, and permitted it to be turned loose to be hunted by dogs which pursued, caught and mangled the fox. This was held to be a violation of the statute, and against public morals, which the statute sought to protect. The reasoning of the court is instructive, and, as it seems to us, conclusive. At the common law, fox hunting and shooting pigeons from a trap were equally lawful, and if fox hunting, in the circumstances stated, is prohibited, so, too, is shooting at captive pigeons liberated from a trap.

In the North Carolina case the facts were identical with the facts in this. Indeed, the agreed statement of facts in this record seems to have been copied literally from the special verdict in that case, with such changes only as were necessary as to the name of the club and the county, and using the word "doves" in this statement instead of "pigeons" in the special verdict. The North Carolina statute,

unlike the others quoted, contains the same definition of "torture," "torment" and "cruelty" as does our statute, and the decision there was that the statute was violated.

The holding of the Massachusetts and North Carolina courts is, in our judgment, not only warranted under their respective statutes, but is in harmony with the advance in enlightened public opinion at this day as to the protection of dumb animals, which, we think, was unquestionably within the contemplation of the legislative mind at the time of the enactment of our statute. Indeed, it would seem that the language of our statute is too plain for construction.

In the North Carolina statute, like ours, the words "torment," "torture" and "cruelty" include every act whereby unnecessary or unjustifiable pain or suffering is caused. The shooting of wild animals in the forest and fishing in the streams do not come within the statute. We have other laws covering these things, and they are permitted at certain seasons of the year. Every act that causes pain and suffering to animals is not prohibited. Where the end or object in view is reasonable and adequate, the act resulting in pain is, in the sense of the statute, necessary or justifiable, as where a surgical operation is performed to save life, or where the act is done to protect life or property, or to minister to some of the necessities of man. But the killing of captive doves, as they are released from a trap, merely to improve one's skill of marksmanship, or for sport and amusement, though there is no specific intention to inflict pain or torture, is, within the meaning of this act, unnecessary and unjustifiable. The same degree of skill may otherwise be readily acquired, and so there was no necessity for the shooting of these doves. Other rational sport and amusement are within easy access of the gentlemen of the Country Club, and so the avowed object of this shooting is neither adequate nor reasonable; hence, under this act, unjustifiable.

Where, as here, the acts charged are admittedly done, not to furnish food, but merely for the sport and amusement of the defendant and his associates, the facts clearly bring the

case within the ban of the statute. In contemplation of this law, the pain and suffering caused by such acts are disproportionate to the end sought to be attained, and furnish no adequate or reasonable excuse for the acts which, to be necessary or justifiable, must be prompted by a worthy motive and a reasonable object.

The judgment, for the reasons given, is affirmed.

*Affirmed.*