[Civil No. 4675. Filed December 13, 1943.]

[143 Pac. (2d) 880.]

THE STATE OF ARIZONA, by Joe Conway, Attorney General, Intervener-Appellant, v. TSUTOMU IKEDA, Plaintiff-Appellee, JOHNSON-PEARCE COMMERCIAL COMPANY, a Corporation, Defendant.

Mr. Joe Conway, Attorney General, and Mr. Thomas J. Croaff, Assistant Attorney General, for Appellant.

Mr. Alfred C. Lockwood, for Appellee.

HALL, Superior Judge.—Tsutomu Ikeda, hereinafter called the plaintiff, brought this action against Johnson-Pearce Commercial Company, a corporation, hereinafter called the defendant, to secure a declaratory judgment that Chapter 89, of the Regular Session Laws of 1943, being an act which limits business dealings with "persons whose movements are restricted," is in violation of the Constitutions of Arizona and of the United States, and is therefore invalid.

Said act reads, so far as material, as follows:

"Section 1. . . . Any person who . . . purchases . . . any . . . personal property . . . from a person whose movements are restricted by operation of law or by any executive or other order authorized by law . . . .shall give notice of the transaction . . . by publication not less than three times in a newspaper of general circulation published in the county in which the principal place of business of such person is located. Upon the completion of notice and at least ten days prior to the consummation of the proposed transaction, he shall file in the office of the secretary of state a copy of the notice, accompanied by detailed information regarding the transaction, and a report thereon not later than the fifth day of each month. . . .

"Sec. 2. . . . Failure to comply with any provision of this act is a misdemeanor, punishable by a fine of . . . etc."

The plaintiff is a native-born citizen of the United States, of Japanese ancestry, engaged in a truck farming business near Mesa, Arizona. The defendant is a mercantile concern, doing business in the County of Maricopa. The State of Arizona, by Joe Conway, Attorney General, has properly intervened and is the appellant herein.

The facts disclose that the plaintiff has, for many years last past, purchased from the defendant a considerable portion of the supplies necessary for conducting his said business; that subsequent to the effective date of said act, the plaintiff attempted to purchase from defendant 20 pounds of turnip seed to be used in planting on plaintiff's farm. The defendant refused to sell the seed to plaintiff without first giving notice as provided in said act, and had it not been for said act it would have sold plaintiff said seed and continued to do business with him as it had in the past. The movements of plaintiff were at said time restricted under the terms of the act.

The plaintiff in his complaint asked the court to determine that said Chapter 89 was void and of no effect for the following reasons:

(a) That said Chapter 89 is contrary to and violates Section 13 of Article 2 of the Constitution of Arizona in that it denies to plaintiff privileges granted to other citizens upon the same terms.

(b) That it is contrary to and violates Section 4 of Article 2 of the Constitution of Arizona in that it deprives plaintiff of property without due process of law.

(c) That it violates Section 1 of Article 14 of the Constitution of the United States in that it abridges the privileges of plaintiff as a citizen of the United States.

(d) That it violates Section 1 of Article 14 of the Constitution of the United States in that it deprives plaintiff of property without due process of law.

(e) That it violates Section 1 of Article 14 of the Constitution of the United States in that it denies to plaintiff the equal protection of the law.

All the above alleged facts are admitted by defendant except it denies that said Chapter 89 is in

violation of and contrary to the Constitutions of the State of Arizona, or of the United States. The Attorney General filed a similar answer after his motion to dismiss had been denied by the court.

The trial was had and the lower court entered its findings of fact, conclusions of law and judgment, holding that said act was in violation of both the Constitutions of Arizona and the United States and was, therefore, void and of no effect, and that plaintiff's rights, status and legal relations are in no manner affected thereby. In due time and form an appeal was taken to this court by the state through its Attorney General.

We consider the case upon the legal questions requiring our determination, rather than upon the specific assignments of error.

The plaintiff contends said act is so vague, indefinite and uncertain that it is unenforceable and in violation of Section 4, Article 2, of the State Constitution and of the Fourteenth Amendment of the Constitution of the United States.

With certain enumerated exceptions, the act prohibits without publication in the newspapers, any transactions with a "person whose movements are restricted by operation of law or by any executive or other order authorized by law, . . . . "

The language does not clearly specify what persons are included within its provisions. The real purpose of the act was unquestionably to restrict the movements of persons of Japanese ancestry who had been moved into the state in large numbers by the federal government following the outbreak of war between the United States and Japan. Today the movements of many persons are at certain times restricted by law or lawful order. Members of the armed forces and persons incarcerated for crime, as well as persons in the category of plaintiff, are

only a few whose movements are restricted in some manner by lawful order or by the laws of our state or nation.

This court has, at least on two occasions, held criminal statutes unconstitutional because they were vague, indefinite and uncertain. *State v. Menderson,* 57 Ariz. 103, 111 Pac. (2d) 622; *State v. Jay J. Garfield Bldg. Co.,* 39 Ariz. 45, 3 Pac. (2d) 983.

In the Menderson case, *supra,* we said [57 Ariz. 103, 111 Pac. (2d) 624]:

"What a statute commands or prohibits in the creation of new crimes should be very definite and easily understood by the common man."

We then quoted with approval the language from other jurisdictions:

" 'Laws which create crime ought to be so explicit that all men subject to their penalties may know what act . . . to avoid.' *United States* v. *Brewer,* 139 U. S. 278, 11 Sup. Ct. 538, 35 L. Ed. 190."

" 'If the Legislature undertakes to define by statute a new offense and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime.' *United States v. Reese,* 92 U. S. 214, 23 L. Ed. 563."

" 'The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit

of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.' *United States* v. *Capital Traction Co.*, 34 App. D. C. 592, 19 Ann. Cas. 68.''

In the case of *State* v. *Jay J. Garfield Bldg. Co.*, *supra* [39 Ariz. 45, 3 Pac. (2d) 984], we were dealing with a statute which reads, so far as material, as follows:

'' . . . Not less than the current rate of per diem wages in the locality where the work is performed shall be paid to persons doing manual or mechanical labor so employed by or on behalf of the state or of any of its political subdivisions. . . . ''

The Garfield Building Company was prosecuted for not paying a current wage existing in the Tucson locality to one of its employees. We held the law to be unconstitutional because the terms ''locality'' and ''current wage'' were too vague, indefinite and uncertain, and approved of the following language:

'' . . . That said statutes contain no ascertainable standard of guilt; that it cannot be determined with any degree of certainty what sum constitutes a current wage in any locality; that the term 'locality' is fatally vague and uncertain; that said statutes are not sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties; that the statute forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess its meaning; that the statutes are too indefinite or uncertain to support an information and are void for uncertainty; that under said statutes an ordinary person cannot intelligently choose in advance what course it is lawful for him to pursue; that said statutes admit of such a double or vague meaning that a citizen may act upon one conception of its meaning and the courts upon another; and that what is lawful or unlawful under said statutes is

left to conjecture, guess and reasonably different constructions.''

 We think said Chapter 89 violates the first principle of due process and is, therefore, unconstitutional.

The plaintiff contends that war power does not appertain to the states, but rests solely in the federal government.

Section 10 of Article 1 of the Constitution of the United States reads as follows:

''No state shall enter into any treaty, alliance, or confederation; . . . '' nor ''shall, without the consent of congress, . . . engage in war, unless actually invaded, or in such imminent danger as will not admit of delay.''

Since the close of the Civil War no state has ever made a claim of ''war power,'' so far as we are able to ascertain, except it be to aid the federal government in carrying out a war purpose already declared by the government. *State* v. *McClure*, (Gen. Sess.) 7 Boyce, Del., 265, 105 Atl. 712.

 Is this act then in aid of any war purpose already declared by the government? There is no existing federal legislation which even remotely approaches in purpose or form the restrictions in this act under consideration. In fact it is in direct contravention of Sections 41 and 42 of Title 8 of the U. S. C. A. which reads:

''§ 41. *Equal rights under the law.* All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties,

taxes, licenses, and exactions of every kind, and to no other.

"§ 42. *Property rights of citizens.* All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

It will be noticed that section 42 applies to citizens of the United States only and section 41 applies to all persons within the jurisdiction of the United States.

It is elementary that where both the Congress of the United States and a state legislative act have reference to the same subject matter, the action of the congress is controlling in case of conflict. *Commonwealth* v. *Nickerson,* 236 Mass. 281, 128 N. E. 273–278, 10 A. L. R. 1568; *Northern Pac. R. Co.* v. *State of North Dakota ex rel. Langer,* 250 U. S. 135, 150, 39 Sup. Ct. 502, 63 L. Ed. 897.

In view of what we have said it is unnecessary to consider other material issues which were so ably briefed by counsel.

Judgment affirmed.

ROSS and STANFORD, JJ., concur.

Note: Because of the illness of Chief Justice McALISTER, the Honorable WM. G. HALL, Judge of the Superior Court of Pima County, was called in to sit in his place and stead.