331 P.2d 1110

**STATE of New Mexico, Plaintiff-Appellant,**

v.

**O. C. BUFORD, Defendant-Appellee.**

No. 6445.

Supreme Court of New Mexico.

Nov. 19, 1958.

Fred M. Standley, Atty. Gen., Hilton A. Dickson, Jr., Asst. Atty. Gen., Robert F. Pyatt, Asst. Atty. Gen., for appellant.

Joseph O. Walton, Hobbs, for appellee.

McGHEE, Justice.

The Assistant District Attorney of Lea County filed an information charging the defendant (appellee) with violation of the New Mexico Cruelty to Animals Statute, in that, on or about the 21st day of February, 1958, the defendant "did promote, procure, counsel, and aid a cockfight in which two roosters, or cocks, were permitted and encouraged to engage in combat, armed with artificial spurs, and in which said cocks were permitted and encouraged to inflict dangerous wounds one upon the other at a public exhibition and before a crowd of spectators in Lea County, New Mexico."

The State now prosecutes this appeal from the action of the trial court in sustaining defendant's motion to quash the information on the ground that the term "any animal," as used in the statute, includes gamecocks, but that as a matter of law the language of the statute does not contemplate the fighting of gamecocks in the manner described in the information above.

The sole issue presented is whether or not cockfighting, as above described, comes within the terms of New Mexico's Cruelty to Animals Statute, § 40-4-3, N.M.S.A. 1953, which reads in part as follows:

"*If any person torture, torment,* deprive of necessary sustenance, cruelly beat, mutilate, cruelly kill or overdrive *any animal,* or unnecessarily fail to provide the same with proper food or drink, or cruelly drive or work the same when unfit for labor, he shall be punished by a fine * * *." [Emphasis supplied.]

We are concerned primarily with the emphasized portion. The State contends that the fighting of gamecocks, as above described, is torture and torment to animals within the meaning of this statute, whereas the defendant asserts that gamecocks are not animals as that term is used, and that if they are, cockfighting is not proscribed by the statute.

Nowhere in the statutes are the terms "animal," "torture," or "torment" defined. Several sister states have, however, provisions specifically defining these terms as used in their cruelty to animal statutes.

"Animal" has been defined to include "every living creature except men," or "the human race," or "human beings;" "every living dumb creature;" "the whole brute creation," or "any domestic animal." See § 828.02, Fla.Stats.1953, F.S.A.; Art. 27, § 62, Md.Code Ann., 1957; § 614.47, Minn.Stats.1957; § 574.050, Nev.Rev.Stats. 1943; § 4:22–15, N.J.Rev.Stats.1937, N.J. S.A.; § 4–1–3, R.I.Gen.Laws 1956; § 40.2201, S.Dak.Code 1939; § 18–108, Va. Code 1950; § 8358, Vt.Stats.Rev.1947;

see, also, Budge v. Parsons, 1863, 3 B. & S. 382, 122 Eng.Rep. 145; Bates v. M'Cormick, 1863, 9 L.T. 175, cited in 2 English and Empire Digest 399.

In view of these definitions and the finding of the trial court that "any animal" includes gamecocks, from which no cross-appeal or cross-error was taken, we assume for purposes of this opinion that the finding is correct. Southern Union Gas Co. v. Cantrell, 1952, 56 N.M. 184, 241 P.2d 1209; Supreme Court Rules 17, subd. 2, 12, subd. 3, §§ 21–2–1(17) (2), 21–2–1 (12) (3), N.M.S.A.1953.

The words "torture" and "torment" are commonly defined to include every act, omission, or neglect whereby unjustified physical pain and suffering or death *is caused or permitted.* State v. Porter, 1893, 112 N.C. 887, 16 S.E. 915; Waters v. People, 1896, 23 Colo. 33, 46, P. 112, 33 L.R.A. 836; Mikell v. Henderson, Fla. 1953, 63 So.2d 508 (cases dealing with statutes setting forth specific definitions); see, also, § 828.12, Fla.Stats.1957, F.S.A.; § 40–20–15, Colo.Stats.Ann.1953; § 14– 360, N.C.Stats.Ann.1953; Title 14, § 102, La.Rev.Stats.1950, L.S.A.; Art. 27, § 62, Md.Code Ann.1957; § 614.47, Minn.Stats. 1957; § 574.050, Nev.Rev.Stats.1943; § 40.2201, S.Dak.Code 1939; § 39–401, Tenn. Code Ann.1955.

Of the above states defining these terms, only Florida, Louisiana, Maryland, and Vermont do not also have specific provi-

sions prohibiting cockfighting, and apparently only Florida has had occasion to consider whether cockfighting comes within their general cruelty to animals statute. Mikell v. Henderson, 1953, supra.

In that case, the court was concerned with two provisions of the Florida statutes, as follows:

§ 828.12 *"Whoever* unnecessarily overloads, overdrives, *tortures, torments,* deprives of necessary sustenance or shelter, or unnecessarily or cruelly beats, mutilates or kills *any animal, or causes the same to be done,* or carries in or upon any vehicle, or otherwise, any animal in a cruel or inhuman manner, shall be punished * * *." [Emphasis supplied.]

§ 828.15 "Nothing in 828.12–828.14 shall be construed to apply to poultry shipped on steamboats or other crafts."

In a declaratory judgment action to determine the validity of the law as applied to breeding and training gamecocks and cockfighting, the court really decided that if cockfighting did come within § 828.12, then the exception created by § 828.15 made the law as applied to cockfighting unreasonable, arbitrary and denied the plaintiff equal protection of the law in that cockfighting on land would be illegal but not if it occurred on a steamboat. Thus, the decision is not a precedent that fighting cocks come within the ban of a cruelty to animals statute. It is further noted that this statute contains the phrase "or causes the same to be done" and that the Florida legislature specifically defined the meaning of "torture" and "torment," supra, which we think creates a material variation between their statute and ours.

The case of State v. Porter, 1893, 112 N.C. 887, 16 S.E. 915, 916, cited by the appellant, is not in point since their statute forbids the "willful wounding, injuring, torturing, or tormenting, and the needless mutilation or killing, of any useful beast, fowl, or animal." Nowhere does the court state the nature of the act done by the defendant, but it said:

"* * * Knowing that men of intelligence and refinement often differ as to what constitutes cruelty in one's treatment of dumb creatures, the legislature has seen fit to define that word, and also the words 'torture' and 'torment,' and has thus made its intent very plain."

The North Carolina court cited Commonwealth v. Turner, 145 Mass. 296, 14 N.E. 130, 131, holding a person who lets loose a captive fox to be hunted by dogs may be convicted under the Massachusetts statute, Pub.St. c. 207, § 3, which provided in part:

"* * * every owner, possessor, or person having the charge or cus-

tody of an animal, * * * or knowingly and willfully authorizes or permits it to be subjected to unnecessary torture, suffering, or cruelty of any kind, shall be punished * * *."

Notwithstanding the fact that the North Carolina statute includes the word "fowl" and defines the words "torture" and "torment", and the Massachusetts statute uses the words "authorizes or permits" in addition to the phrase "causes or procures" in another provision, both states have specific provisions prohibiting cockfighting. § 14–362, N.C.Gen.Stats.1953; c. 272, § 94, Mass.Ann.Laws 1956.

In the case of Waters v. People, 23 Colo. 33, 46 P. 112, cited by appellant, the court held that a member of a gun club, shooting doves from a trap for amusement, was liable under the Colorado cruelty statute, even though the doves which were killed were used for food. The Colorado statute, Mill's Ann.St. § 104, now § 40–20–1, Colo.Rev. Stat.1953, provided:

"Every person who overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, unnecessarily or cruelly beats, or needlessly mutilates or kills, or carries in or upon any vehicles, or otherwise in a cruel or inhuman manner, any animal, or causes or procures it to be done, or who, having the charge and custody of any animal, unnecessarily fails to provide it with proper food, drink, or protection from the weather, or cruelly abandons it, upon conviction * * *."

Again the statute is more comprehensive than ours and contains the phrase "or causes or procures" it to be done. Furthermore, Colorado also has a statute specifically prohibiting cockfighting. § 40–20–4, Colo. Rev.Stats.1953.

Only one American decision has been found which has held that cockfighting was an unlawful activity absent a statute specifically prohibiting it. It is Commonwealth v. Tilton, 1844, 3 Metc., Mass., 232, which is annotated in 3 Eng.Rul. Cases 149. The court declined to pass on the contention that game-cocks are not "implements" used in gaming, proscribed by an unlawful gaming act prohibiting certain specific gaming activities in inns and "any other unlawful game or sport", but stated, 8 Metc. at page 234:

"* * * And we are of the opinion, that the game or sport of cockfighting is unlawful, because it is a violation alike of the prohibitions of a statute, and of the plain dictates of the law of humanity, which is at the basis of the common law, and specially recognized in the constitution, which makes it the duty of the legislature 'to countenance and inculcate the principles of humanity.' Const. of Mass. c. 5 § 2. The Rev.Sts. c. 130, § 22, have prohibited cruelty to animals, under

penalty of fine and imprisonment. But we think it is prohibited by the principles of the common law, as a cruel and barbarous sport. Lord Ellenborough says, in Squires v. Whisken, 3 Campb. 141, that 'cock-fighting must be considered a barbarous diversion, which ought not to be encouraged or sanctioned in a court of justice.' See also Rex v. Howel, 3 Keb. 510. As being barbarous and cruel, leading to disorder and danger, and tending to deaden the feelings of humanity, both in those who participate in it, and those who witness it, it appears to us to stand on the same footing with bull-fighting, bear-baiting, and prize-fighting with fists or dangerous weapons, all of which, we think, would be considered as unlawful games or sports. * * *"

It should be noted, however, that Massachusetts passed a statute specifically prohibiting cockfighting or the owning of fighting cocks a short time later in 1859. See c. 272, § 94, Mass.Ann.Laws 1956, supra.

The case of Rex v. Howel, 1676, 3 Keb. 465, 510, 84 E.R. 826, 849, cited in the Tilton case, stated that keeping a cock-pit was a common law offense, but the case appears to rest on a violation of the Unlawful Games Act, 1541 (33 Han. 8, c. 9) for keeping a cock-pit. See also, 18 Halsbury's Laws of England 187–188, n. (d) (3d Ed.

1957) (hereinafter cited as Halsbury's); 3 Eng.Ruling Cases 149 Annotation.

Squires v. Whisken, 1811, 3 Campb. 140–141, 170 E.R. 1333, 1334, also cited in the Tilton case, held that the plaintiff could not recover a wager won by producing a cock for the purpose of fighting on an appointed day when the other party failed to produce such a cock, although the sum wagered was under £10 and might be enforced under the gaming law. The opinion states:

"Lord Ellenborough.—Is not cock-fighting an illegal sport?

"Scarlet said, he had not been able to find any statute by which it is prohibited; * * *

"Lord Ellenborough.—Cock-fighting must be considered a barbarous diversion, which ought not to be encouraged or sanctioned in a court of justice. I believe that cruelty to these animals, in throwing at them, forms part of the dehoratory charge of Judges to grand juries; and it makes little difference whether they are lacerated by sticks and stones, or by the bills of each other. * * *"

Thus, none of these decisions specifically hold that cockfighting comes within a general cruelty to animals statute.

Appellant has made reference to several English cases, all of which dealt with Eng-

land's Cruelty to Animals Act, 1849, Stat. 12 & 13 Vict. c. 92, s. 2, 3, and 29, now repealed by the Protection of Animals Act, 1911, 1 & 2 Geo. 5, c. 27, which specifically prohibits both cockfighting and keeping a place for cockfighting. See 1 Halsbury's 711, § 1349; 18 Halsbury's 187, § 371.

The 1849 statute provided in part:

"s. 2 enacts that if any person shall 'cruelly beat, ill-treat, over drive, abuse, or torture, or cause or procure to be cruelly beaten, ill-treated, overdrived, abused, or tortured, any animal,' he shall be subject to a penalty.

"s. 3 enacts, that every person who shall keep or use any place for the purpose of fighting or baiting any bull &c, cock, or other kind of animal, whether of domestic or wild nature, shall be liable to a penalty * * *; provided that every person who shall receive money for the admission of any other person to any place kept or used for any of the purposes aforesaid shall be deemed to be the keeper thereof; 'and every person who shall in any manner encourage, aid, or assist at the fighting or baiting of any bull, &c, cock, or other animal as aforesaid,' shall be liable to a penalty. * * *"

"s. 29 provides that the word 'animal' shall be taken to mean any horse, &c, dog, cat, or any other domestic animal."

The cases dealing with these provisions held as follows. Where a publican and another fought two cocks in the bowling alley of a public-house, the Cruelty to Animals Act, supra, did not apply, there being no proof that the place was a place kept or used for the fighting of cocks. Clark v. Hague, 1859, 2 E. & E. 281, 121 E.R. 142. It was not an offense to assist at the fighting of cocks unless in a place specially kept or used for that purpose. Moreley v. Greenhalgh, 1863, 3 B. & S. 374, 122 E.R. 142 (stone quarry); Budge v. Parsons, 1863, 3 B. & S. 379, 122 E.R. 144 (open field for the first time). In Budge v. Parsons, 1863, 3 B. & S. 382, 122 E.R. 145, the court held a cock was a domestic animal within section 2, supra, and that one was guilty of causing a cock to be cruelly ill-treated, abused, and tortured where the cock, having suffered a broken thigh, was put back into the ring with the cock it was fighting, whereby it was killed. In other words, inducing a cock to continue to fight after it was severely injured was held to violate the above cruelty provision. In Murphy v. Manning, 1877, 2 Ex.D. 307, the court held as a matter of fact that the cutting of the combs of cocks, where there was evidence that the operation caused great pain and was inflicted in order to fit them either for cockfighting or winning

prizes at exhibitions, came within the provision, "cruelly ill-treat, abuse, or torture," and was not justified by the purposes for so doing. Thus, these cases do not stand for the proposition that cockfighting itself was bad at common law nor under the Cruelty to Animals Act, supra, although apparently an Irish case, Bates v. M'Cormick, 1863, 9 L.T. 175, held that to cause one cock to fight another was proscribed by this statute, a cock being an "animal" within section 2. See, 2 The English and Empire Digest 399. In fact, these cases indicate that cockfighting was considered legal at common law, since a conviction under the statute depended on whether it was for keeping a cock-pit or for inducing a wounded cock to continue to fight so that the act came within the cruelty provision.

There is authority that cruelty to animals is strictly a statutory offense and if prohibited it must come within the terms of the statute. 2 Am.Jur. § 12, Animals, §§ 162, 164; Waters v. People, 23 Colo. 33, 46 P. 112; McCausland v. People, 58 Colo. 303, 145 P. 685, citing 1 R.C.L. §§ 108, 109.

Certainly from early times, cockfighting has been considered a lawful and honorable sport in New Mexico. See Kilpatrick v. State, 1953, 58 N.M. 88, 265 P.2d 978 (dictum). In 1875 the Territorial Legislature passed Sunday Laws which contained a specific prohibition of cockfighting on Sunday.

See Laws of 1875–1876, ch. 29, § 1. It should be noted that a statute which had the effect of amending this statute was passed on February 17, 1887, five days after the original cruelty to animals statute was approved. See Laws of 1887, ch. 26, now § 40–44–2, N.M.S.A.1953. Thus, the legislature again recognized that cockfighting was legal on weekdays, this time after passage of the cruelty to animals provision.

While it is true that in the minds of some men, there is nothing more violent, wanton, and cruel, necessarily producing pain and suffering to an animal, than placing a cock in a ring with another cock, both equipped with artificial spurs, to fight to the death, solely for man's amusement and sport, others consider it an honorable sport mellowed in the crucible of time so as to become an established tradition not unlike calf-roping, steer riding, bull-dogging, and bronco busting. As stated in the case of Mikell v. Henderson, supra [63 So.2d 509]:

"Everyone familiar with roosters, and particularly game roosters, knows that they need no encouragement to fight. It is not necessary that their tail feathers be pulled, or that any other inducement be offered, or stimulant applied, in order to produce a fight."

Admittedly the words "torture" and "torment", under the prevailing definitions

58

which include pain and suffering "permitted" would seem to embrace fighting cocks equipped with artificial spurs or gaffs capable of cutting deep wounds and sharp gashes in the cocks, but when looking at the statute as a whole we are not convinced the legislature so intended it to be construed.

■■■■ Penal statutes are to be strictly construed since every man should be able to know with certainty when he is committing a crime. United States v. Reese, 92 U. S. 214, 23 L.Ed. 563; State v. Tsutomu Ikeda, 1943, 61 Ariz. 41, 143 P.2d 880. Such a statute should define the act necessary to constitute the offense with such certainty that the person violating it must know that his act is criminal when he does it. State v. Prince, 1948, 52 N.M. 15, 189 P.2d 993; United States v. Capital Traction Co., 34 App.D.C. 592, 599, 19 Ann.Cas. 68.

The language of the statute, however, seems to apply only to brute creatures and work animals and the history shows that it was passed in relation to other laws governing livestock. No specific definition of the meaning of the controversial terms was set forth nor does the statute itself contain words making it unlawful for a person to allow two animals to do what they by nature would do in the absence of such person under similar circumstances.

The appellee has favored us with an appendix to his brief showing the states having a specific provision prohibiting cockfighting and those having only a general cruelty law. After a careful examination of those provisions we note the following: Forty-one states, Hawaii, the District of Columbia, and Alaska, have specific prohibitions against fighting game cocks, etc. Seven states have only general cruelty to animal laws, but no case has been found dealing with cockfights under these general laws, other than the Florida case noted above. Of those states having specific provisions against cockfighting, none were found to be without a general cruelty statute similar to, but more comprehensive than the New Mexico statute. Notwithstanding the fact that many states specifically defined the controversial terms, they still had a specific prohibition, some including it within the general cruelty law.

■■■ Thus we reach the conclusion that the type of cruelty to animal statute we are construing was not passed with the intention of prohibiting such sports as cockfighting. We further believe that, to so construe the statute, would open up many other activities to prosecution, though they are not within its spirit. For example, using live minnows to bait hooks.

"These statutes are the outgrowth of modern sentiment. They spring

originally from tentative efforts of the New England colonies to enforce imperfect but well recognized moral obligations. * * * Society could not long tolerate a system of laws which might drag to the criminal bar every lady who might impale a butterfly, or every man who might drown a litter of kittens." Grise v. State, 37 Ark. 456, annotated in 3 Eng.Ruling Cases 149.

We deem any prohibition of cockfighting must come from the legislature and hold the judgment should be affirmed.

It is so ordered.

LUJAN, C. J., and COMPTON, J., concur.

SHILLINGLAW, J., concurring specially.

SADLER, J., dissenting.

SHILLINGLAW, Justice (concurring specially).

The sole issue presented is whether or not cockfighting comes within the provisions of § 40-4-3, N.M.S.A.1953. Whether cockfighting is to be considered an honorable sport is a question not necessary for us to decide.

I concur in the result.