145 P.2d 999

**STATE v. GALLEGOS.**

No. 4782.

Supreme Court of New Mexico.

Feb. 11, 1944.

David W. Carmody, Dist. Atty., Arthur Livingston, Asst. Dist. Atty., both of Santa Fe, for appellant.

H. A. Kiker, of Santa Fe, Fred E. Wilson and Louis C. Lujan, both of Albuquerque, for appellee.

THREET, Justice.

This is an appeal by the State of New Mexico from an order sustaining a motion to quash and the dismissal of an indictment. Appellee was indicted by the Grand Jury of Santa Fe County with a violation of Chapter 8, 1939 N. M. Session Laws, 1941 Comp., § 41-3601, which reads as follows: "It shall hereafter be unlawful for any public officer, or deputy of such officer, or any employee in any public capacity of the State of New Mexico or of any county, city, town, village or school district, or any member of any board or commission or other body created by law for public service or employee thereof, to knowingly and wilfully make, cause to be made, or wilfully and knowingly permit to be made or entered upon any public record any false or untrue statement of fact, or to knowingly and wilfully record any written instrument, judicial order, judgment or decree other than as the original thereof in fact appeared, or in any wise to knowingly and wilfully falsify or make falsely any record authorized or required by the laws of New Mexico to be kept, or to knowingly and wilfully falsely issue or cause to be issued any false or untrue certified copy of any such record. Any person violating any of the provisions of this section shall be deemed guilty of a felony, and upon conviction thereof shall be punished by confinement in the penitentiary for not less than one (1) year nor more than five (5) years, or by a fine of not less than five hundred dollars ($500.00), nor more than one thousand dollars ($1,-000.00), or by both such fine and imprisonment, in the discretion of the court, and offender shall be subjected to removal from office."

The indictment contains five counts. The charging portion of each count is as follows: "The Grand Jurors of the County of Santa Fe accused J. O. Gallegos of the crime of knowingly and wilfully making upon a public record a false and untrue statement of fact, while a public officer of the State of New Mexico."

In response to a motion by appellee, the State filed a bill of particulars to which was attached, and made a part thereof, copies of the public records upon which the appellee was charged to have made the false and untrue statement of fact.

The public record described in the first count of the indictment was a reimbursement voucher; and the public records described in the second, third, fourth and fifth counts of the indictment were purchase vouchers.

On the incoming of the bill of particulars, appellee moved to quash the indictment, as aided by the bill of particulars, on the ground that, among others, the indictment, as aided by the bill of particulars, failed to charge a crime, as the vouchers, upon which appellee is charged to have made "a false and untrue statement of fact", were not public records at the time the alleged statements were charged to have been made.

The trial court sustained the motion to quash upon two grounds, the first being the one advanced in the motion that the vouchers upon which defendant made the allegedly false statements were not public records at the time he made such statements on them. The second ground upon which the trial court rested its order was one deduced by the court seemingly on its own notion after considering the statute. It is best expressed by quoting from the order as follows: "The Court further finds that the indictment shows that the defendant, although a public officer of the State of New Mexico does not fall within the class of persons against whom said Statute, Chapter 8, Laws of 1939, is directed, it not being allowed or shown that he was a public officer charged by law or otherwise with the duty of making or keeping or having custody of the alleged public records, as shown in exhibits attached to the bill of particulars."

Appellant assigns error to the trial court and relies upon three points for reversal of the court's ruling.

I. The vouchers, exhibits A, B, C, D and E, are public records within the meaning of section 1, chapter 8, Laws of 1939, and under said statute it is only necessary that the false statements be made upon them during their preparation as public records.

II. The defendant does fall within the provisions of section 1, chapter 8, Laws of 1939, under the allegations of the indictment and bill of particulars.

III. Each count of the indictment aided by the bill of particulars charges a crime under section 1, chapter 8, Laws of 1939.

We may safely assume that vouchers of the two kinds mentioned in the bill of particulars become public records when filed in the office of the State Auditor, who is the official custodian of such records. 1941 Comp., § 7-107, provides for reimbursing public officials for supplies furnished or services rendered and that the claim for reimbursement shall be made on vouchers signed and sworn to by the claimant and accompanied by the original bill of the claimant attached to the voucher. 1941 Comp., § 7-108, provides for the payment of expenses of officers and employees upon vouchers, with receipts attached, duly signed and sworn to by the claimant. There is really no dispute between the parties as to when these vouchers became public records. All agree that they did not attain such status until they were filed in the office of the State Auditor, a conclusion supported directly by the holding in Harrington v. State, 54 Miss. 490, and in

its implications by the language of the opinion in Clement v. Graham, 78 Vt. 290, 63 A. 146, Ann.Cas.1913E, 1208. The vouchers thus were public records authorized and required to be kept in the office of the State Auditor—not public records of the department in which the defendant was an official as disclosed by the record.

At this point a disagreement arises as to the meaning and scope of the statute. The State argues that under it, if a public officer or employee of one office makes a false or untrue statement on a writing intended to become and which by his procurement does become a matter of public record in another office, he is punishable under the statute. In other words, the State would construe the language making it an offense "to knowingly and wilfully make * * * upon any public record any false or untrue statement of fact", to read "to knowingly and wilfully make in any writing or document intended to become and which by his procurement does become a public record any false or untrue statement of fact". Thus construing the statute and giving it an overlapping effect as between various public offices of the state and its political subdivisions, it is broad enough to prohibit and punish the acts of defendant which the State says it is prepared to prove at his trial under the indictment in question.

Admittedly, to give the statute the broad construction urged by the State would in the minds of some of us amount to amending it by judicial construction, a legislative rather than a judicial function.

Confronted by this consideration, we seek some other fair meaning for the statute than that thus urged upon us. Obviously, it is confined in its prohibitions to public officials, their deputies and employees. If it means what the State says it does, there would appear no good reason to confine its operation to those in the public service. Many matters originating with private individuals are made matters of public record by their acts, such as deeds, mortgages, mining locations, mechanic's liens, sworn vouchers covering sales to the state, county, city or other political subdivisions and so forth. False or untrue statements of fact in any of these documents are as reprehensible and as misleading as those made by a public officer or employee and when filed are just as truly false public records. We are impressed that if the statute had the meaning claimed for it by the State, it would have embraced within its interdictions private persons as well as public officers and employees as do 1941 Comp., §§ 41-2001 and 41-3602, penalizing the forgery, alteration or destruction of public records, hereinafter mentioned. So, searching for another plausible meaning, we find it in the second ground upon which the trial court rested its order sustaining the motion to quash. Briefly, the trial judge interpreted the statute as limited in the prohibitions laid on public officials and their employees to the public records of their own offices over which they have custody and control and designed to insure integrity and accuracy in their preparation, recording and certification.

It seems clear, as held by the trial judge, that the chief purpose of the statute is to guarantee, in so far as legislation may, integrity and verity in the making of the records of a public nature in the various state, county and municipal offices in the state to the end that the public may safely rely upon the truth of such records and certified copies thereof. Any effort to make of it a fraud statute or one aimed at obtaining money under false pretenses, although either fraud or false pretenses incidentally may motivate a violation thereof, seems utterly to misconceive its true nature and purpose as proclaimed in its title and in every sentence and syllable of its body. The title reads: "An Act Making Unlawful the Making of False Public Records or the Making of False Entries Therein or Certifying to False Copies Thereof, and Providing Penalties for the Violation Thereof."

Four separate and distinct acts by public officials or their employees are made punishable by the statute. They are:

1. To knowingly and wilfully make or cause to be made, or permit to be made or entered upon any public record any false or untrue statement of fact; or

2. To knowingly and wilfully record any written instrument, judicial order, judgment or decree, other than as the original thereof in fact appeared; or

3. In any wise to knowingly and wilfully falsify or make falsely any record authorized or required by the laws of New Mexico to be kept; or

4. To knowingly and wilfully falsely issue or cause to be issued any false or untrue certified copy of any such record.

In examining the four separate acts, just listed, which constitute a violation of the statute, those described in paragraphs 2 and 4, supra, obviously can only be committed by a public officer in relation to the records of his own office. The acts described in these two paragraphs just as plainly refer to public records already in being in a particular office. On the other hand, the acts described in paragraphs 1 and 3, supra, as constituting a violation of the statute, just as clearly relate to the origin—the making and preparation—of public records. We think it fair and reasonable to assume that in thus prohibiting the making or entry as a matter of public record of any false or untrue statement of fact or the making falsely of any record authorized or required by law to be kept, the legislature was thinking of the same relationship between public officers and the records mentioned as in the acts condemned in paragraphs 2 and 4, supra, namely, public records which they control and are charged with the duty of making and keeping in conducting the business of their respective offices.

So interpreting the statute, we avoid the forced construction urged upon us by the State, amounting as some of us feel to a practical amendment of its terms. Furthermore, thus construed, it forms a natural pattern with the other two statutes

mentioned, §§ 41-2001 and 41-3602, for protecting the integrity and verity of public records from the moment of their origin to and through any certification thereof. When § 41-3601 was enacted as L.1939, c. 8, existing public records for more than eighty years had enjoyed the protection of 1941 Comp., § 41-2001, making punishable the forgery or counterfeiting of public records with intent to defraud. Likewise, for more than thirty-five years public records had enjoyed the protection of 1941 Comp., § 41-3602, rendering punishable their alteration, defacement, mutilation, destruction or concealment. But there was in existence no over-all statute giving the sweeping coverage provided by this one, embracing every public officer, from the highest to the lowest, his deputies and employees, guaranteeing in their origin and preparation the integrity and verity of public records, as well as certified copies thereof, which various public officials were charged with the duty of making and keeping. Thus the statute in question filled an unoccupied field and complemented the two statutes above mentioned relating to public records.

We agree with the trial judge's view that the statute is designed to insure integrity in the making of the records of a public nature in every office of the state and its political subdivisions. It seeks to accomplish this purpose by imposing punishment, even to the extent of removal from office, on the officer, his deputy or employee, who violates the statute in any of the ways prescribed in the making, recording or certification of records of a public nature in his office. Since, admittedly, the vouchers in question are not public records of the office with which defendant is connected and, indeed, were not public records at all at the time of the alleged offense, he is not one of the class of persons against whom the statute is directed.

In other words, the "outsider" or stranger to the office of him where a given instrument or writing becomes and remains a matter of public record is outside the scope and not within the purview of the statute. It is confined to those having to do with the making and certifying matters of public record in their own offices. If, for instance, after the document in question became a matter of public record in the office of the state auditor, the defendant had secured access to it and made in or upon it the same allegedly false statements here claimed, he would be guilty of violating either 1941 Comp., § 41-2001 against forgery of public records; or, 1941 Comp., § 41-3602, against altering or mutilating public records; but he would not be guilty of violating this statute because a stranger to the office in which the document was a matter of public record.

Likewise, if some one connected with the office of the State Auditor should knowingly and wilfully have changed or altered the document after it became a matter of public record in that office, such

person would violate one of the other statutes referred to but not this one. And, the making of a false or untrue statement of fact even though by a public officer or employee, unless in the preparation of a public record of his office, while it might violate some other law, depending upon the intent and purpose with which such false statement was made, does not violate this statute.

On the other hand, the public officer or employee who knowingly and wilfully makes a matter of public record in his office any false or untrue statement of fact, or so causes or permits the same to be made or entered, or otherwise falsifies or makes falsely any public record of his office, violates this statute and incurs its penalties. Thus, as we interpret the statute, it is one to guarantee integrity in the preparation of public records in the various offices of the state by those charged with the duty of making them to the end that their verity, when completed, may be relied upon—nothing more, nothing less.

It follows from what has been said that the district court was correct in sustaining the motion to quash the indictment and its judgment will accordingly be affirmed.

It is so ordered.

SADLER, C. J., and BICKLEY and BRICE, JJ., concur.

MABRY, J., did not participate.