484 P.2d 1295

STATE of New Mexico, Plaintiff-Appellee,

v.

Raymond SANCHEZ, Avelino Sanchez, Defendants-Appellants.

No. 583.

Court of Appeals of New Mexico.
April 23, 1971.
Dissenting Opinion May 7, 1971.

Leon Taylor, Albuquerque, for appellants.

David L. Norvell, Atty. Gen., Santa Fe, Frank N. Chavez, Asst. Atty. Gen., for appellee.

## OPINION

WOOD, Judge.

Raymond Sanchez was convicted of burglary and larceny. Avelino Sanchez was convicted of burglary, larceny and unlawfully taking a vehicle. Sections 40A–16–3, N.M.S.A.1953 (Repl.Vol. 6), 40A–16–1, N.M.S.A.1953 (Repl.Vol. 6, Supp.1969), and 64–9–4, N.M.S.A.1953 (Repl.Vol. 9, pt. 2). Both defendants appeal. The issues involve: (1) probable cause for arrest and (2) sufficiency of the evidence.

### Probable cause for arrest.

Defendants moved to suppress evidence taken from the car in which they had been riding shortly before their arrest. Suppression of this evidence was sought on the basis there was no probable cause for their arrest. By "probable cause" for arrest we mean "reasonable ground for belief of guilt." State v. Hilliard, 81 N.M. 407, 467 P.2d 733 (Ct.App.1970). See State v. Deltenre, 77 N.M. 497, 424 P.2d 782 (1966), cert. denied, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967).

The officer testified he received a radio report that a burglary was in progress at a specified residence; "[t]hat two subjects in a foreign dark green car were seen at the area. * * *" Enroute to the residence, the officer was advised by the radio operator "* * * that the subjects were leaving and heading east on Gun Club [Road], * * *" There is no contention that the radio operator did not have probable cause to relay this information to the officer. See Whiteley v. Wyoming Penitentiary Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). This was just prior to 10:00 a.m.

The officer proceeded east on Gun Club Road. He observed a small green foreign car with two persons in it turning south onto Isleta from Gun Club Road. It was the only green car on the road. At this point, he recognized Raymond as a passenger in the car. The officer followed the green car until it pulled into the driveway of a known "fence." At this point, he recognized Avelino as the driver of the car. He had known both defendants previously. Raymond got out of the car and went up to the door of the "fence's" house, then returned to the car.

The car then started out of the driveway. The officer testified: "* * * and when they saw me approaching they backed off, went back into the driveway and defendant Raymond Sanchez jumped out of the car and ran." Avelino stayed in the car. When the officer got up to the car he saw a television set, two guns and a pair of binoculars. The officer arrested Avelino "for burglary." This was at approximately 10:00 a.m. Raymond was also arrested "for burglary" a short time later.

Defendants correctly point out that the arresting officer "* * * did not have a description of the reported burglars * * *, did not know what items (if any) were stolen * * * and had only a vague general description of the car the burglars were said to be driving. * * *" Defendants state: "* * * No probable cause for arrest existed, but

at the most mere suspicion. * * *" We disagree.

■ The officer was informed of a burglary in progress; that two men were involved; that they left the burglarized residence in a green foreign car headed east on a certain road. The officer located such a car headed east on the identified road. This was the only car of such description on the road. He followed that car; there were two men in it; those men were the defendants. All of this occurred within the time period of "shortly before" until "approximately 10:00 a.m." These facts were sufficient for the officer, as a man of reasonable caution, to believe the defendants were the men who committed the burglary. The officer had probable cause for arrest. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Deltenre, supra; State v. Hilliard, supra; compare State v. Sedillo, 81 N.M. 47, 462 P.2d 632 (Ct.App.1969). There being probable cause for arrest, the trial court did not err in denying the motion to suppress.

*Sufficiency of the evidence.*

It is not disputed that a burglary and a larceny occurred, and that the car involved had been taken from the owner without his consent. By motions for a directed verdict of acquittal, defendants challenged the sufficiency of the evidence. Whether the trial court properly denied these motions is the issue under this point.

Defendants claim there was insufficient evidence to tie them to the crimes of burglary and larceny; Avelino makes the same claim in connection with the unlawful taking of the car. Defendants assert: "* * * The only proof presented that could tie the defendants to the crime with which they were charged was the presence of stolen property in the car in which they were riding. * * *" They rely on State v. Beachum, 82 N.M. 204, 477 P.2d 1019 (Ct.App.1970), where it is stated: "* * * recently stolen property found in the exclusive possession of a defendant

will not alone support a conclusion of guilt. * * *"

Here, there is more than possession of recently stolen property. The evidence, reviewed previously herein, connects the defendants with the residence that was burglarized and from which the property was taken.

■ As to the car charge, Avelino overlooks the definition of the crime. Section 64–9–4, supra, states in part: "Any person who shall take any vehicle intentionally and without consent of the owner thereof shall be guilty of a felony * * *." Avelino was driving the car, stolen approximately an hour prior to the arrest; the owner testified he gave no consent to Avelino to have the vehicle in his possession. As a part of his alibi defense, Avelino testified he had borrowed the car from an unidentified person several miles from the point the car was taken. Nevertheless, Avelino's testimony is evidence of an intentional taking. The only item for which there is no direct evidence is that of criminal intent, that is, a conscious wrongdoing. See State v. Austin, 80 N.M. 748, 461 P.2d 230 (Ct.App.1969). The inference of conscious wrongdoing could properly be inferred from the evidence of the place where the car was taken, the admission that Avelino had taken the car, and the evidence that no consent had been given.

Defendants, however, claim their convictions rest on circumstantial evidence which fails to meet the requirements of the circumstantial evidence rule. As stated in State v. Beachum, supra, the circumstances "* * * must point unerringly to the defendant, and be incompatible with, and exclude every reasonable hypothesis other than his guilt * * *." In this case, the evidence of the time factors, distances, observations of defendants, locations, and possession of the stolen goods points unerringly to defendants and excludes every reasonable hypothesis other than guilt.

■ The judgment and sentences of Avelino Sanchez are affirmed. The convictions of Raymond Sanchez are affirmed.

However, the record shows that Raymond Sanchez was convicted of Counts II and III and acquitted of Count I. He was not sentenced for his conviction under Count III but was sentenced under Counts I and II. The cause is remanded for the purpose of imposing a sentence upon Raymond Sanchez consistent with the Counts under which he was convicted.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, Judge.

I join in the affirmance of the burglary and larceny convictions but dissent from the affirmance of the conviction of Avelino Sanchez for unlawfully taking a vehicle.

SUTIN, Judge (dissenting).

A dissenting opinion is the expression of a difference of opinion in the philosophy of the law. Public interest and the legislative policy of adopting criminal statutes, apart from the criminal code, are involved. Whether this dissent has any value or whether it will have any future effect, depends upon the passage of time. A review of dissenting opinions in New Mexico proves that in some instances, they have made effective the principle that law is justice.

Avelino Sanchez was indicted, convicted and sentenced for the unlawful taking of a vehicle, contrary to § 64–9–4(a), N.M.S.A. 1953 (Repl.Vol. 9, pt. 2). He was sentenced for a period of not less than one year nor more than five years, the sentences to run consecutively not concurrently with convictions and sentences for burglary and larceny.

Section 64–9–4(a), supra, reads as follows:

"(a) Any person who shall take any vehicle intentionally and without consent of the owner thereof shall be guilty of a felony. The consent of the owner of the vehicle to its taking shall not in case be presumed or implied because of such owner's consent on a previous occasion to the taking of such vehicle by the same or a different person."

Count I of the indictment reads as follows:

"On or about the 8th day of December, 1969 in the County of Bernalillo, State of New Mexico, the said AVELINO SANCHEZ and RAYMOND SANCHEZ, did take a vehicle, towit: A 1964 Toyota Corona, New Mexico License No. 2–K7552, intentionally and without consent of Sosten H. Mares, owner thereof."

The criminal complaint filed the same day the indictment was returned contains identical language. There was no charge that the acts constituting the defense were "unlawfully or feloniously" done, nor does this language appear in the statute. A penal statute must be strictly construed, since every man should be able to know with certainty when he is committing a crime. State v. Buford, 65 N.M. 51, 331 P.2d 1110 (1958).

Neither this Count I nor the statute states a criminal offense.

We want to approach this problem from two points of view. First, assuming the statute to be constitutional, (1) was the indictment and information valid? (2) Was there substantial evidence that Avelino Sanchez was guilty? Second, is this statute constitutional?

1. Was the Indictment and Information valid, and was there Substantial Evidence that Avelino was Guilty?

The only evidence in the record on this subject was that Mr. Mares, the owner of the car, did not know who took his car from its parked position, but he did not give Avelino permission to remove his car. Approximately an hour thereafter, Avelino was driving the car. There was no evidence of "criminal intent." This is an essential element of the "crime." State v. Austin, 80 N.M. 748, 461 P.2d 230 (Ct. App.1969).

No instructions were given the jury on "criminal intent." This is mandatory. State v. Craig, 70 N.M. 176, 372 P.2d 128 (1962). The only instructions on the above statute and information were as follows:

"* * * To this indictment the defendants have pleaded Not Guilty, and this plea of Not Guilty puts upon the state the burden of proving to your satisfaction and beyond a reasonable doubt all the material allegations of the indictment. The indictment itself is not evidence before you but is merely the formal presentment or charge upon which the defendants are put to trial."

   *     *     *     *     *     *

"(INSTR. NO. 2) You are instructed that the definitions of the crimes with which the defendants are charged are as follows:

"As to Count I: Any person who shall take any vehicle intentionally and without consent of the owner thereof shall be guilty of the crime of Unlawful taking of a vehicle."

   *     *     *     *     *     *

"(INSTR. NO. 6) You are instructed that larceny includes the concept of criminal intent. In addition, it includes an intention to permanently deprive the owner of possession of his property. Such intention, to permanently deprive the owner of possession, is not an essential element of a statute prohibiting the intentional taking of a vehicle without the consent of the owner."

The trial court did not instruct the jury that the taking of the vehicle must be knowingly and feloniously done as set forth in State v. Austin, supra. If criminal intent is a constituent part of the crime to be charged, the failure to allege such intent that the acts constituting the offense were "unlawfully and feloniously done" is a fatal defect. State v. Shedoudy, 45 N.M. 516, 118 P.2d 280 (1941); § 41-6-16, N.M.S.A.1953 (Repl.Vol. 6).

All of this means (1) that the indictment and criminal complaint were fatally defective; (2) that "criminal intent" was not an issue in the case; and (3) that "criminal intent" is not an essential element to prove a felony in New Mexico. In view of this error, it is wrong to impose a consecutive penalty on Avelino.

2. Is the Statute Constitutional?

State v. Austin, supra, held § 64-9-4(a) constitutional. No authority is cited to support this conclusion. It appears to be the only constitutional decision on this statute in judicial history. The Supreme Court previously held § 64-9-4(b), N.M.S. A.1953 (Repl.Vol. 9, pt. 2), constitutional. State v. Roybal, 66 N.M. 416, 349 P.2d 332 (1960). This section provides that "Any person who shall steal any automobile tire, * * * from an automobile shall be guilty of a felony." This is an anti-theft provision. "The word to 'steal' and commit 'larceny' mean one and the same thing." State v. Shroyer, 49 N.M. 196, 160 P.2d 444 (1945).

In *Austin*, the court held that the legislature cannot forbid the doing of an act and make its commission a crime without the presence of criminal intent. It decided that criminal intent, although not in the statute, was required under the statute. Nevertheless, it believed the trial court solved the problem by charging the jury that the taking of the vehicle must be knowingly and feloniously done. Therefore, the "defendant has been found guilty of conscious wrongdoing in taking the vehicle." The opinion concluded: "Section 64-9-4(b), [sic (a)], supra, is not unconstitutionally vague or uncertain."

In effect, State v. Austin, supra, added the words "knowingly and feloniously" to the statute. It now reads:

"(a) Any person who shall 'knowingly and feloniously' take any vehicle intentionally and without consent of the owner thereof shall be guilty of a felony."

Brown v. Village of Deming, 56 N.M. 302, 243 P.2d 609 (1952), defines felonious as follows:

"* * * Webster's International Dictionary defines 'felonious' as 'malicious;

villainous, wicked, traitorous, perfidious; in law * * * done with intent to commit a crime.' A widely accepted instruction to juries of the meaning of 'feloniously' as used in informations and indictments in New Mexico is that the act was done wrongfully and wickedly, and that the accused, if convicted, may be punished by imprisonment in the penitentiary. Grand larceny is a felony in this state."

District courts cannot solve constitutional problems by instructing a jury under a void statute. Courts of appeal cannot clothe themselves in legislative robes and make language criminal. State v. Austin, supra, should be overruled. The courts must interpret the laws, not make the laws.

In De Graftenreid v. Strong, 28 N.M. 91, 206 P. 694 (1922), an act of the legislature was held unconstitutional. The state contended that, if the act contained further words, the constitutional objection would be obviated. The state argued that the intent of the legislature was established by testimony in the case and such intent necessitated the use of these additional words in reading the act. The court said:

"To uphold such a proposition would be to say that a court may take testimony as to legislative intent in passing an act, and, having ascertained such intent to its own satisfaction, it may interpolate in the statute provisions which are not contained therein, and which may be exactly contrary to what was the actual intent. What the Legislature intends is to be determined, primarily by what it says in the act. It is only in cases of ambiguity that resort may be had to construction. Courts cannot read into an act something that is not within the manifest intention of the Legislature, as gathered from the statute itself. To do so would be to legislate, and not to interpret. There is no ambiguity in this statute, and it neither requires nor admits of construction. * * *"

This language has been followed in judicial tradition in various shades. We must not amend statutes by judicial construction because this is a legislative, not a judicial function. State v. Gallegos, 48 N.M. 72, 145 P.2d 999 (1944).

In 1948, the Supreme Court held the embezzlement statute unconstitutional. State v. Prince, 52 N.M. 15, 189 P.2d 993 (1948). The reason for its decision was that the statute omitted essential elements of the crime of embezzlement. Of particular importance to the public is the following language:

"A penal statute should define the act necessary to constitute an offense with such certainty that a person who violates it *must* know that his act is criminal when he does it." [52 N.M. at 18, 189 P.2d at 995]. [Emphasis added.]

State v. Prince, supra, had a dissenting opinion, claiming that the element of fraudulent intent may be read into the statute. This has been an effective dissent because the courts, thereafter, adopted this rule by distinguishing the *Prince* case.

State v. Dennis, 80 N.M. 262, 454 P.2d 276 (Ct.App.1969), held the arson statute unconstitutional because it was not a reasonable exercise of the police power. The statute involved was parallel to the automobile statute. It read in part: "Arson consists of the intentional damaging by any explosive substance or setting fire * * *." The court's analysis of the arson statute covers the instant case like a glove. It proves that judicial thought changes with authorship.

Can a person who intentionally borrows a neighbor's or a friend's car without consent to deliver a child to a hospital, run an errand, or seek relief of some nature, actually know that his act is criminal when he does it? Does a son who intentionally takes his father's car without consent to see a movie know that his act is a felony?

State v. Diamond, 27 N.M. 477, 202 P. 988, 20 A.L.R. 1527 (1921), gives the answer.

"Where the statute uses words of no determinative meaning, or the language is

so general and indefinite as to embrace not only acts commonly recognized as reprehensible, but also others which it is unreasonable to presume were intended to be made criminal, it will be declared void for uncertainty." [27 N.M. at 485, 202 P. at 991].

See also State v. Buford, supra.

Laws 1953, ch. 138 is "An Act Relating to Motor Vehicles and Trailers; Establishing a Division of Motor Vehicles within the Bureau of Revenue; Defining the Powers and Duties of the Division; and Providing: * * * 6. *Anti-Theft Provisions.*"

This Act contains 125 sections, thirteen articles, and repealed many previous enactments of the legislature, including § 68–151, N.M.S.A.1941, being Laws of *1919*, ch. 150, § 28, providing penalty for use of vehicle without the owner's consent; § 68–149, being Laws of *1917*, ch. 66, § 1, providing penalty for taking vehicle for temporary use without permission; and § 68–150, being Laws of *1917*, ch. 66, § 2, giving district courts exclusive jurisdiction in cases concerning the taking of a vehicle for temporary use without permission. The statutory history on this subject began in 1915. Chapter 98, Laws of 1915.

For a period of 54 years, no charges were filed and convictions appealed which required an interpretation of the statutes. State v. Austin, supra, opened the door in 1969.

Article IX of the 1953 Act is entitled *Special Anti-Theft Laws,* and covers §§ 86 to 93. Section 89 is the provision involved in the present case, and is entitled Unlawful Taking of a Vehicle. But § 89 is not Anti-Theft, and is not "Unlawful Taking." The legislature intended § 89 to be "Anti-Theft."

"Theft" is not defined in New Mexico. It gives the appearance of being identical with larceny. See § 40A–16–1, N.M.S.A. 1953 (Repl.Vol. 6, Supp.1969), where the title of the Act of larceny refers to "theft

of a firearm." It has different meanings. Unauthorized uses of automobiles are not Anti-Theft laws. 52A C.J.S. Larceny § 1(2). Anti-Theft laws must mean laws against stealing, larceny, felonious taking and removing with intent to deprive the owner thereof, obtaining by false pretense, trick or artifice, etc. See Words & Phrases Vol. 41(A), p. 93, et seq.; 52A C.J.S. Larceny, §§ 1(2) and 1(3); 50 Am.Jur. 2d Larceny, § 2. "Theft" means larceny or stealing. The above statute does not contain any such language. The legislature intended § 64–9–4(a), supra, to be a criminal statute with criminal elements— anti-theft provisions.

When the statute was first adopted in 1915, the motor vehicle must have been a precious article in New Mexico not to be used by anyone other than the owner for any purpose without his consent. Perhaps it was easy to drive away a car in 1915. The statute has never contained within its language any reason why a felony exists when a member of the family takes the car without papa's consent, or a neighbor drives another's car down the street to visit a friend, or takes a child to a hospital for care, or does not wrongfully deprive the owner of possession of the car without the owner's consent.

In his final argument to the jury, the assistant district attorney stated:

" * * * [O]f course you will have to determine whether Avelino Sanchez actually *stole* this car or whether, as he said, some friend loaned it to him with all the property in it with no questions asked. If you decide there was a *theft* of the car and Avelino was the person *stealing* the car, then you need to decide whether Raymond was with him. * * * It is obvious that one of them *stole* that car. * * *" [Emphasis added.]

Statements of stealing the car are sprinkled throughout the argument. This indicates belief on the part of the assistant district attorney that § 64–9–4(a) was a

"theft" or "larceny" statute and "criminal intent" was necessary.

If criminal intent is required and proved, guilt can be established under the larceny statute. Section 40A–16–1, N.M.S.A.1953 (Repl.Vol. 6). This section provides that "Larceny consists of stealing of anything of value which belongs to another." Perhaps the district attorney could not prove Avelino stole the Toyota Corona. But he could argue this matter even though Avelino was only driving the car without Mares' consent. Therefore, Avelino must go to the penitentiary.

Section 64–9–4(a), supra, is unconstitutional. It violates public interest by making criminal, acts which are not theft and are not unlawful or felonious. Motor vehicles are not items of property which can escape from the meaning of theft and larceny. If motor vehicles can escape, then the legislature can add horses, bicycles, flowers, water hoses and lawn mowers.

I, accordingly, respectfully dissent.