487 P.2d 183

**STATE of New Mexico, Plaintiff-Appellee,**
**v.**
**Arthur SLUDER, Defendant-Appellant.**
**No. 640.**

Court of Appeals of New Mexico.
June 18, 1971.

Harold H. Parker, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Tom Dunigan, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SPIESS, Chief Judge.

Defendant was convicted of the unlawful taking of a vehicle. [§ 64–9–4, N.M.S.A. 1953 (Repl.Vol. 9, pt. 2)]. He has appealed. We affirm the conviction. The facts are of little significance in arriving at this decision. Briefly, they are:

One Robert A. Simpson parked his automobile in the parking lot of a bowling alley. He left the car, but did not remove the keys. The defendant took the automobile without the consent or permission of Simpson.

Defendant has presented and argued six points raising various procedural questions, including claimed improper admission of certain evidence. Defendant's first point, as stated by him, is:

"It was error requiring reversal to deny motion for striking the jury panel when two pro-defense jurors had been dismissed from the jury panel."

It appears that more than a month prior to defendant's trial two jurors were excused. These jurors, defendant claims, were "pro defense." He argues that the dismissal of these jurors denied him a fair and impartial jury, because he had no opportunity to have these two "pro defense" jurors on his jury. We note that in the selection of trial juries for the district in question, new panels are selected each month. All of the members of the panel upon which the "pro defense" jurors had served, with one exception, had been excused from service and a new panel selected for the trial of cases during the month defendant's case was set for trial.

In State v. Gonzales, 82 N.M. 388, 482 P.2d 252 (Ct.App.1971), cert. denied, 482 P.2d 241 (February 22, 1971), we held:

" * * * All that defendant had a right to was a fair and impartial jury. If defendant had such a trial jury, the fact that a prospective juror had been improperly excused did not amount to reversible error."

Defendant's argument is that he could not obtain a fair and impartial trial jury from a panel which did not include a member or members who might be partial to him. The record is barren of any showing which would indicate that defendant was denied the right to a fair and impartial jury in the trial of his case.

It is next argued that the trial court erred in denying defendant's motion for a mistrial, which was based upon the conten-

tion that the sheriff had displayed defendant to the jury panel in his prison uniform. It is argued that any such display would tend to destroy the presumption of innocence in the minds of the jurors to which defendant is entitled.

Other than counsel's statement, there is no showing that any juror saw defendant in his prison clothes. There is no showing that defendant was in the courtroom at any time dressed in prison clothing. This point is ruled against defendant. See State v. Gomez, 82 N.M. 333, 481 P.2d 412 (Ct.App. 1971).

■ Defendant next contends that the trial court erred and abused its discretion in denying a motion for continuance. The continuance was sought upon the ground that defendant was unable to secure the presence of a particular witness, although a diligent and thorough effort had been made to locate him. The record discloses that the testimony expected from the absent witness would not support or aid defendant in his defense. Consequently, abuse of discretion is not shown. State v. Nieto, 78 N.M. 155, 429 P.2d 353 (1967); State v. Tapia, 81 N.M. 365, 467 P.2d 31 (Ct.App.1970).

■ Defendant's fourth point relates to the claimed failure of the prosecution to identify for his benefit a police officer who had undertaken unsuccessfully to find defendant's fingerprints upon the allegedly stolen car. Defendant moved the court for an in camera inspection of the police files. The apparent purpose was to obtain the name of the officer who had examined the car for fingerprints. The court denied the motion but informed counsel for defendant:

"* * * but I want to afford you time now to simply call over there, find out and, if necessary, you can do it from this phone, call over and see who took—if there was any attempt to get fingerprints, who the officer was, and try to get him over here. * * *"

It appears to us that defendant was accorded, by direct inquiry, the right he sought through an examination of police files.

It is further argued under this point that the trial court erred in denying defendant's motion for mistrial upon the ground that "* * * Defendant did not know until near the end of the State's case that Defendant's fingerprints had been sought and not found on the allegedly stolen car and an order had been granted to give Defendant all exculpatory matter. * * *".

It is not shown that defendant was prejudiced in his defense in not learning that fingerprints had been sought by the police, but not found upon the car, until near the end of the state's case, nor does it appear that defendant was denied the right to secure the presence at the trial of the officer who had unsuccessfully attempted to secure the fingerprints. Absent a showing of prejudice, we see no basis for reversal upon this point.

■ Defendant's Point V. is stated by him as follows:

"The prosecution insisted in bringing before the jury arrests of the Defendant upon which he was not convicted in an effort to prejudice the jury."

Upon cross-examination of the defendant, the prosecutor established felony convictions in North Carolina and in Texas. Thereafter, the following occurred:

"Q. Isn't it true that on March 20th, 1969, also here in Albuquerque you committed a larceny?

MR. PARKER: Your Honor, I think this is a bad faith question. May I approach the bench?

MR. WILSON: I can prove them if you so desire.

THE COURT: Let's see what Mr. Parker has to say."

(A discussion was had off the record at the bench among the Court and Counsel.)

Cross-examination continued—

"Q. Isn't it true that on March 20th, 1969, you entered into a conspiracy with Johnny Whit and others to

commit the crimes of burglary and larceny?

A. Convicted or arrested for it?

Q. Let me repeat the question. Isn't it true that on March 20th, 1969, here in Albuquerque, New Mexico, that you entered into a conspiracy with Johnny Whit and others to commit the crimes of burglary and larceny?

A. Yes, I was arrested.

Q. That still isn't responsive to my question, Mr. Sluder. Let me ask it one more time.

A. I don't understand what you're talking about.

Q. Isn't it true—

MR. PARKER: I think he has made a fair attempt to answer the question.

THE COURT: I don't think he understands the question. That is what the witness said.

Q. Isn't it true that on March 20th, 1969, you entered into an agreement and a conspiracy with Johnny Whit and others to commit the crimes of burglary and larceny?

A. No, sir.

Q. And isn't it true that here in Albuquerque, New Mexico, on or about September 15th, 1970, you and Johnny Whit stole two color televisions from the Sundowner Motel?

A. No, sir.

MR. WILSON: That's all. Thank you."

The foregoing questions asked by the prosecutor upon cross-examination were clearly an attack upon the accused's credibility. There is nothing in the record indicating the questions were asked in bad faith. See State v. Garcia, 80 N.M. 247, 453 P.2d 767 (Ct.App.1969). The bad moral character of a witness, including the accused, when a witness in his own behalf, may be shown for the purpose of attacking the credibility through securing from the witness on cross-examination admissions of specific acts of misconduct. State v. Hargrove, 81 N.M. 145, 464 P.2d 564 (Ct.App. 1970). Under this rule, allowing the questions to be asked of defendant was not improper, nor an abuse of the trial court's discretion.

Defendant finally contends that the trial court erred in denying his motion for mistrial upon the ground that the District Attorney announced, in the presence of the jury, that the state wanted to give the defendant a lie detector test with the results to be given to the jury. The matter of defendant being given a lie detector test was first injected in the case by defendant's counsel, who asked defendant, upon direct examination, whether he had offered to take such a test, to which defendant answered, "Yes, sir." The question and defendant's response may have left the impression that the state had refused to give him such test. The prosecutor then offered, in the presence of the jury, to give defendant a lie detector test. Defendant clearly is in no position to complain of the statement made by the prosecutor because the matter to which he has objected was brought about by his own conduct. See State v. Harrison, 81 N.M. 324, 466 P.2d 890 (Ct.App.1970). The trial court further instructed the jury to disregard the testimony and statements relating to the lie detector test. No basis for reversal upon this point is shown.

Judgment of the trial court is affirmed. It is so ordered.

WOOD, J., concurs.

SUTIN, Judge (dissenting).

I dissent for the same reasons stated in the dissenting opinion filed in State v. Sanchez, 82 N.M. 585, 484 P.2d 1295 (Ct. App. May 7, 1971).