506 P.2d 1217

STATE of New Mexico, Plaintiff-Appellee,

v.

John Gordon STRANCE, Defendant-Appellant.

No. 961.

Court of Appeals of New Mexico.

Feb. 9, 1973.

Phil Krehbiel, Toulouse & Moore, P. A., Albuquerque, for defendant-appellant.

Charles W. Daniels, Paul A. Phillips, Albuquerque, New Mexico Civil, Liberties Union, amicus curiae.

David L. Norvell, Atty. Gen., Prentis Reid Griffith, Jr., Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Convicted of criminal abortion (§ 40A-5-3, N.M.S.A.1953 (2nd Repl.Vol.1972)) defendant appeals. Defendant's third point for reversal, the unconstitutionality of the criminal abortion statute, is dispositive of the appeal.

The statutory scheme under which defendant was convicted reads as follows:

"40A-5-1. Definitions.—As used in this article [40A-5-1 to 40A-5-3];

A. 'pregnancy' means the implantation of an embryo in the uterus;

B. *'accredited hospital' means one licensed by the health and social services department*;

C. 'justified medical termination' means the intentional ending of the pregnancy of a woman at the request of said woman or if said woman is under the age of eighteen [18] years, then at the request of said woman and her then living parent or guardian, by a physician licensed by the state of New Mexico *using acceptable medical procedures in an accredited hospital upon written certification by the members of a special hospital board that*:

(1) *the continuation of the pregnancy, in their opinion, is likely to result in the death of the woman or the grave impairment of the physical or mental health of the woman; or*

(2) *the child probably will have a grave physical or mental defect; or*

(3) *the pregnancy resulted from rape, as defined in sections 40A-9-2 through 40A-9-4 NMSA 1953. Under this paragraph, to justify a medical termination of the pregnancy, the woman must present to the special hospital board an affidavit that she has been raped and that the rape has been or will be reported to an appropriate law enforcement official; or*

(4) *the pregnancy resulted from incest.*

D. *'special hospital board' means a committee of two [2] licensed physicians or their appointed alternates who are members of the medical staff at the accredited hospital where the proposed justified medical termination would be performed, and who meet for the purpose of determining the question of medical justification in an individual case, and maintain a written record of the proceedings and deliberations of such board.*"

"40A-5-2. Persons and institutions exempt.—This article [40A-5-1 to 40A-5-3] does not require a hospital to admit any patient for the purposes of performing an abortion, nor is any hospital required to create a special hospital board. A person who is a member of, or associated with, the staff of a hospital, or any employee of a hospital, in which a justified medical termination has been authorized and who objects to the justified medical termination on moral or religious grounds shall not be required to participate in medical procedures which will result in the termination of pregnancy, and the refusal of any such person to participate shall not form the basis of any disciplinary or other recriminatory action against such person."

"40A-5-3. Criminal abortion.—Criminal abortion consists of administering to any pregnant woman any medicine, drug, or other substance, or using any method or means whereby an untimely termination of her pregnancy is produced, or attempted to be produced, with the intent to destroy the fetus, and the termination is not a justified medical termination.

Whoever commits criminal abortion is guilty of a fourth degree felony. Whoever commits criminal abortion which results in the death of the woman is guilty of a second degree felony."

██ We reverse and remand for discharge holding that the italicized portions of the above statute (§ 40A-5-1, supra)

are unconstitutional by virtue of the holdings in Doe v. Bolton, —— U.S. ——, 93 S. Ct. 739, 35 L.Ed.2d 201, decided January 22, 1973 and Roe v. Wade, —— U.S. ——, 93 S.Ct. 705, 35 L.Ed.2d 147, decided January 22, 1973. We see no reason to repeat the scholarly discussion of Mr. Justice Blackmun in the majority opinions in those cases. Suffice for the benefit of this opinion we set forth only the summaries in *Roe* and *Doe*.

The *Roe* summary reads:

"1. A state criminal abortion statute of the current Texas type, that excepts from criminality only a *life saving* procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment.

(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability the State, in promoting its interest in the potentiality of human life, may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother.

2. The State may define the term 'physician,' as it has been employed in the preceding numbered paragraphs of this Part XI of this opinion, to mean only a physician currently licensed by the State, and may proscribe any abortion by a person who is not a physician as so defined.

In Doe v. Bolton, *post*, procedural requirements contained in one of the modern abortion statutes are considered. That opinion and this one, of course, are to be read together.

This holding, we feel, is consistent with the relative weights of the respective interests involved, with the lessons and example of medical and legal history, with the lenity of the common law, and with the demands of the profound problems of the present day. The decision leaves the State free to place increasing restrictions on abortion as the period of pregnancy lengthens, so long as those restrictions are tailored to the recognized state interests. The decision vindicates the right of the physician to administer medical treatment according to his professional judgment up to the points where important state interests provide compelling justifications for intervention. Up to those points the abortion decision in all its aspects is inherently, and primarily, a medical decision, and basic responsibility for it must rest with the physician. If an individual practitioner abuses the privilege of exercising proper medical judgment, the usual remedies, judicial and intra-professional, are available."

The *Doe* summary reads:

"In summary, we hold that the JCAH accredited hospital provision and the requirements as to approval by the hospital abortion committee, as to confirmation by two independent physicians, and as to residence in Georgia are all violative of the Fourteenth Amendment. . . ."

By our holding we have of necessity limited the definition of "justified medical termination." As quoted from Bradbury & Stamm Const. Co. v. Bureau of Revenue, 70 N.M. 226, 372 P.2d 808 (1962) in State v. Spearman, 84 N.M. 366, 503 P.2d 649 (Ct.App.1972):

"It is well established in this jurisdiction that a part of a law may be invalid

and the remainder valid, where the invalid part may be separated from the other portions, without impairing the force and effect of the remaining parts, and if the legislative purpose as expressed in the valid portion can be given force and effect, without the invalid part, and, when considering the entire act it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid. . . . "

Based upon the severability clause contained in the criminal abortion Act we cannot say the Legislature would not have passed the valid portions of the Act had it known certain portions were invalid.

When the limited definition of "justified medical termination" is read into § 40A–5–3, supra, what emerges is a criminal statute penalizing the act of performing abortions on the unconsenting, or performing an abortion on a woman under the age of eighteen years without the consent of both the woman and her then living parent or guardian, or the performance of an abortion by a person who is not a physician licensed by the State of New Mexico.

Since the record shows that defendant was a physician licensed by the State of New Mexico and that the abortion was at the request of the woman, who was not under the age of eighteen years, it is clear that defendant was not within the purview of § 40A–5–3, supra, after the holdings in *Roe* and *Doe*.

Accordingly, the cause is reversed and remanded to the trial court with direction to discharge the defendant.

It is so ordered.

LOPEZ, J., concurs.

SUTIN, J., dissenting in part and concurring in part.

SUTIN, Judge (dissenting in part and concurring in part).

I concur with the majority opinion that this case be reversed and Dr. Strance be discharged.

I dissent because the entire criminal abortion statute is unconstitutional, including that part which is not underlined in the majority opinion.

(A) *The Entire Statute is Unconstitutional.*

This statute was deemed unconstitutional in 1970. New Mexico's 1969 Criminal Abortion Law; 10 Natural Resources Journal, p. 591 (1970). It should be repealed. The reasons set forth are strong and compelling.

The Legislature and society should peruse the many studies made in the field of abortion. It would convince them, as it does me, the sociological value of the consensual physician-patient relationship in arriving at a decision. As Justice Douglas pointed out in Roe v. Wade, supra:

> Many studies show it is safer for a woman to have a medically induced abortion than to bear a child.

Legislation which seeks protection of prenatal life should not be adopted unless some strong compelling state interest demands it. No such compelling interest exists in New Mexico. See, New Mexico's 1969 Criminal Abortion Law, supra. It establishes beyond a doubt that the statute serves no state welfare or safety interest.

Anti-abortion statutes have had the same effect on the health and welfare of women that prohibition had for citizens generally under the XVIII Amendment to the Constitution of the United States, repealed December 5, 1933; that anti-drug statutes have today on the young men and women of our country. "The estimates, at least as of 1967, of illegal abortions obtained annually in the United States vary from 200,000 to 1,200,000." In New Mexico, women are "forced to hospital shop, first in town, and if unsuccessful throughout New Mexico, or other states, (then) perhaps even to Juarez or Nogales, Mexico." Criminal abortions are probably the most common single crime of maternal deaths.

Every pregnant woman should have the freedom openly to seek the services of a licensed physician, the use of clean offices

or hospitals. This is her right to privacy and the right to be left alone. In the event of harm, she is protected by the laws of medical malpractice.

(B) *The Portion of the Statute Not Italicized is Unconstitutional.*

The pertinent portions of the statute remaining are:

40A–5–1. Definitions.

A. 'pregnancy' means the implantation of an *embryo* in the uterus;

\* \* \* \* \* \*

40A–5–3. Criminal Abortion.

Criminal abortion consists of administering to any pregnant woman any medicine, drug, or other substance, or using any method or means whereby an untimely termination of her pregnancy is produced, or attempted to be produced, with the intent to destroy the *fetus*, and the termination is not a justified medical termination. (Emphasis added).

I quote from p. 610 of the law review article, supra:

The 1969 abortion law appears to cover all unjustified terminations of pregnancy from the time the fertilized ovum starts to be implanted in the uterus until childbirth. But does it really?

The law forbids producing an "untimely termination of . . . pregnancy." Pregnancy is defined as "the implantation of an embryo in the uterus." The law forbids, therefore, producing an untimely termination of the implantation of an embryo in the uterus. A strict reading of this language is that all that is unlawful is an abortion during those few days within which the embryo becomes implanted in the uterus.

The law no where defines the words "embryo" or "fetus." "Embryo" appears in the definition of "pregnancy" and "fetus" appears in the definition of criminal abortion as an ingredient of the element "with intent to destroy the fetus." The embryo and the fetus are not the same. The embryo exists about 12 weeks, and then becomes a fetus. Again,

a strict reading of the law would be that it is not a crime to terminate pregnancy if the intent is to destroy the embryo, rather than the fetus. Strictly construed, only the untimely termination of pregnancy from approximately the 13th week of pregnancy to childbirth, when the fetus exists, would be unlawful.

Penal statutes are strictly construed, but they must be of such sufficient certainty that a person will know his act is criminal when he does it. We will not change or limit the wording in a criminal statute in order to construe it against the accused. State v. Collins, 80 N.M. 499, 458 P.2d 225 (1969); dissenting opinion, State v. Sanchez, 82 N.M. 585, 484 P.2d 1295 (Ct.App. 1971).

The criminal abortion statute is not limited to physicians administering to a pregnant woman. It applies to any person who administers any medicine, drug or other substance or uses any method or means of untimely termination of pregnancy. The language is not sufficiently certain to alert a person that his act is criminal.

I close with the quotation from the law review article, supra:

The direct, immediate, and intimate effect of embryonic and fetal existence and the termination thereof is upon the family. It is not upon society. When desired, agreed to, and understood by the woman seeking it, termination of pregnancy possess no element of evil which detrimentally affects the public as a whole or endangers the health, welfare, or safety of society. There is no collective judgment of the people of this country that the embryo or fetus is morally entitled to survive. Termination of pregnancy under medically safe conditions should not be a crime. It is arbitrary and unreasonable to punish conduct such as this based on a consensual patient-physician relationship wherein a decision to terminate pregnancy is usually always formed from serious consideration of the consequences.