This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40510**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**VINCENT L. LOPEZ,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** This appeal arises out of a criminal case against Defendant Vincent Lopez, a former detective with the Doña Ana Sheriff's Office (DASO), in which the State alleges that documents and evidence related to cases worked by Defendant while he was a detective were found unlawfully stored in his prior residence upon preparation of the home for a foreclosure sale. After discovering the investigative reports and the associated evidence, some of which still remained in police evidence bags and boxes,

the State charged Defendant with nine counts of tampering with public records in violation of NMSA 1978, Section 30-26-1 (1963), and nine counts of tampering with evidence in violation of NMSA 1978, Section 30-22-5 (2003). In a pretrial hearing, the district court, ruling sua sponte on its own motion, concluded that the evidence and documents found in Defendant's former home were not "public records" because law enforcement records are specifically excepted from disclosure under the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2023). *See* § 14-2-1(D) (2019).[1]

**{2}** The district court therefore dismissed the tampering with public records charges and consequently reduced the remaining tampering with evidence counts to petty misdemeanors. The court reasoned that, because the tampering with public records charges "no longer exist," the sentencing scheme for the crimes underlying evidence tampering was indeterminate and any evidence tampering charge must be prosecuted as a petty misdemeanor. *See State v. Radosevich*, 2018-NMSC-028, ¶ 34, 419 P.3d 176 (holding that when the sentence for an underlying crime is indeterminate, punishment for evidence tampering must be prosecuted at the "lowest level").

**{3}** The State appeals the district court's sua sponte order regarding both its dismissal of the tampering with public records charges and its reduction of the tampering with evidence counts to petty misdemeanors. Because IPRA is not dispositive as to what constitutes public records under Section 30-26-1, and IPRA's enumerated exceptions apply only to disclosure rather than status as a public record, we conclude the district court erred in its reliance on IPRA's provisions and reverse.

## DISCUSSION

**{4}** The district court's sua sponte dismissal of the tampering with public records charges against Defendant is reviewed de novo. *State v. Penman*, 2022-NMCA-065, ¶ 15, *cert. granted* (S-1-SC-39487, Oct. 31, 2022). On appeal, the State argues that these charges were improperly dismissed for either of two reasons. First, the State argues that, if IPRA does apply to Section 30-26-1, the district court misconstrued the law enforcement exception contained therein to erroneously conclude that the investigative reports found in Defendant's former residence are not "public records" under the criminal statute. According to the State, if IPRA is applicable to criminal statutes, then the law enforcement exception in Section 14-2-1(D) merely precludes such documents from public disclosure and does not mean that they are altogether outside of the definition of public records. Alternatively, the State asserts that a precise statutory definition of the term is not necessary to maintain a prosecution for an alleged violation of Section 30-26-1, but if clarification was needed as to the meaning of "public record" under the statute, the district court should have looked to the Public Records Act (PRA), NMSA 1978, §§ 14-3-1 to -23 (1959, as amended through 2015), which was in

---

[1]The relevant hearing occurred in April 2022. IPRA was subsequently amended to expand upon its applicability to law enforcement records and now states, "Law enforcement records are public records, except as provided by law and this subsection." Section 14-2-1.2. However, because this amendment was not in force at the time of the proceedings below, we do not consider it in this opinion.

existence at the time Section 30-26-1 was enacted whereas the relevant sections of IPRA were not. *See* 1959 N.M. Laws, ch. 245, § 2 (enacting the PRA); 1963 N.M. Laws, ch. 303, § 26-1 (enacting the tampering with public records statute).

**{5}** Defendant concedes that IPRA does not apply to this case, but argues that the documents at issue did not constitute "public records" under the common law definition of the term, which he asserts should control the meaning of Section 30-26-1 absent any statutory definition. Relying on out-of-state case law, Defendant argues that government records only become "public" when a person "could show a need for the information in maintaining or defending an action." Defendant further points us to two New Mexico cases that he suggests demonstrate application of this common law definition in our state. *See State v. Gallegos*, 1944-NMSC-009, 48 N.M. 72, 145 P.2d 999; *State v. Dartez*, 1998-NMCA-009, 124 N.M. 455, 952 P.2d 450. Lastly, Defendant argues that without a specific definition, the meaning of "public record" under Section 30-26-1 is ambiguous and this Court should affirm the district court's dismissal of the charges against him under the rule of lenity. *See State v. Ogden*, 1994-NMSC-029, ¶¶ 25-27, 118 N.M. 234, 880 P.2d 845. Unpersuaded, we conclude that the investigative reports seized from Defendant's former home are public records within the plain meaning of Section 30-26-1, and the district court erred in looking to IPRA for clarification of the statute. We explain.

**{6}** Section 30-26-1(E) states, in pertinent part, that tampering with public records consists of "knowingly destroying, concealing, mutilating or removing without lawful authority any public record or public document belonging to or received or kept by any public authority for information, record or pursuant to law." While there is no statutory definition of the terms used in Section 30-26-1, such is not always required for a statute imposing criminal penalties to be clear and unambiguous. "The words of a statute, including terms not statutorily defined, should be given their ordinary meaning absent clear and express legislative intention to the contrary." *Ogden*, 1994-NMSC-029, ¶ 24. "If the language of the statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. McWhorter*, 2005-NMCA-133, ¶ 5, 138 N.M. 580, 124 P.3d 215.

**{7}** *Black's Law Dictionary* defines "public record" as "[a] record that a governmental unit is required by law to keep." *Public Record*, *Black's Law Dictionary* (12th ed. 2024). Similarly, *Merriam-Webster Dictionary* defines the term as "a record made by a public officer or a government agency in the course of the performance of a duty." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/legal/public%20record (last visited on May 29, 2024). As we explain below, the plain meaning of "public record" within Section 30-26-1 is sufficiently clear and unambiguous that a precise statutory definition is not necessary to clarify the term's meaning, and the district court erred by relying on IPRA to do so.

**{8}** It is axiomatic that police may seize and retain evidence of a crime and develop documentation in furtherance of investigation into criminal activity. *Cf.* N.M. Const. art. II, § 10 (authorizing the reasonable seizure of property); NMSA 1978, § 29-1-1 (1979)

("It is . . . the duty of every . . . peace officer to investigate all violations of the criminal laws of the state."). Here, the investigative reports found in Defendant's former residence deemed by the district court to fall outside of the ambit of public records were documents related to nine separate past crimes, which Defendant investigated while he was employed as a detective for DASO. The documents included reports and other related forms bearing Defendant's name and DASO case numbers, and the evidence was contained in DASO evidence bags or boxes similarly identified by DASO case numbers.

{9}     Because these documents relate to past—or, in some instances, ongoing—criminal investigations, and being that they were made or held by a public agency in the performance of its duty, we conclude that they fall within the plain meaning and common usage of "public record" within Section 30-26-1(E). Defendant's argument that the charges were properly dismissed under the common law definition of "public record" is unpersuasive. Defendant relies on two cases to illustrate our appellate courts' reliance on the common law definition of "public records." *See Gallegos*, 1944-NMSC-009; *Dartez*, 1998-NMCA-009. However, neither cited case supports the notion that the reports or documents seized from Defendant's house are not properly considered public records. *Gallegos* merely stands for the proposition that the documents at issue under the criminal statute in that case, a predecessor version of our tampering with public records statute, did not become public records until they were filed with the appropriate government entity. *See* 1944-NMSC-009, ¶ 13. At no point does *Gallegos* state or imply that documents maintained by law enforcement offices are not public records. Indeed, contrary to Defendant's assertions, *Gallegos* recognizes that the documents at issue became public records, even if only after they were filed with the state. *See id.* ¶ 11 ("The vouchers thus were public records authorized and required to be kept in the office of the State Auditor.").

{10}    Similarly, *Dartez* merely holds, in relevant part, that the defendant's conviction of tampering with public records was supported by sufficient evidence because the state elicited testimony that the documents at issue were "public documents." *See* 1998-NMCA-009, ¶¶ 18-19. Indeed, this Court affirmed the defendant's conviction after the jury was instructed that a public document is "any document or record, evidencing or connected with the public business or the administration of public affairs, preserved in or issued by any department of the government," *Id.* ¶ 18 (internal quotation marks omitted), which more closely mirrors the dictionary definitions of public record discussed above than Defendant's suggested common law definition. Defendant, therefore, has provided us with no basis to conclude that any common law definition of "public record," if it exists in New Mexico, excludes the investigative reports at issue here, and we decline to do so. "[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists." *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129.

{11}    Defendant argues that, without a more specific definition of "public record," regardless of its source, the term is ambiguous within Section 30-26-1 and the district court's order should be affirmed under the rule of lenity. *See Ogden*, 1994-NMSC-029,

¶¶ 25-27. However, "[a] criminal statute is not ambiguous for purposes of lenity merely because it is *possible* to articulate a construction more narrow than that urged by the [state]." *Id.* ¶ 26 (alteration, internal quotation marks, and citation omitted). "Rather, lenity is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Id.* (internal quotation marks and citation omitted).

**{12}** Here, the Legislature crafted a statute imposing criminal penalties for knowingly and unlawfully concealing or removing "any public record or public document belonging to or received or kept by any public authority." Section 30-26-1(E). The investigatory documents at issue were the property of DASO, a public authority, and were to be properly secured and maintained by its officers in furtherance of DASO's obligation to investigate criminal conduct. *See* § 29-1-1; DASO Policies & Procedures, § 200-052, 19(i) (2022), https://www.donaanacounty.org/home/showpublisheddocument/1001/638289931685230000.pdf ("Employees shall not, at all times, store property in their personal desks, lockers, vehicles, homes, or other place that are not secure or would interrupt the chain of custody.") Thus, there can be no question that the documents at issue were "public records" within the meaning of Section 30-26-1, and we will not interpret a criminal statute specifically designed to protect against tampering with such records to preclude liability for unlawfully storing them in an unauthorized location. *See generally State v. Tarin*, 2014-NMCA-080, ¶ 8, 331 P.3d 925, ¶ 8 (rejecting a party's proposed interpretation of a statute where doing so "would produce an unworkable situation and absurd result").

**{13}** The meaning of "public record" is sufficiently clear in this context, and there exists no reasonable doubt that the "statute's intended scope," based on its "language and structure . . . and motivating policies," includes the investigative reports and other documents found in Defendant's former home. *See Ogden*, 1994-NMSC-029, ¶ 26 (internal quotation marks and citation omitted). We therefore reject Defendant's argument that Section 30-26-1 is impermissibly ambiguous under the rule of lenity.

**{14}** Having so concluded, we briefly address the district court's reduction of the tampering with evidence charges to petty misdemeanors. At the outset, we note that the State's charging documents indicate that the counts alleging tampering with evidence relate to the physical evidence seized from Defendant's prior residence, and the crimes underlying these charges are those originally investigated by Defendant and the DASO, not the tampering with public records charges discussed above. More importantly, the district court's only justification for this reduction was that the charges underlying evidence tampering, which it appeared to believe were the tampering with public records charges, had been dismissed by the court. Having concluded that the district court erred on that ground, we similarly conclude that its order reducing the tampering with evidence charges was erroneous as there is no longer any legal basis to support such a reduction.

**CONCLUSION**

**{15}**   For the reasons set forth above, we reverse the order of the district court and remand for further proceedings in accordance with this opinion.

**{16}   IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**GERALD E. BACA, Judge**