## THEORET v. STATE OF FLORIDA
### Case No. 81-150-AP
Eleventh Judicial Circuit, Appellate Division, Dade County
September 27, 1982

Greenfield & Duval, for appellant.

Alan Lipson, Assistant Attorney General, for appellee.

Before KOGAN, GOLDMAN, and SCOTT, J.

Appellant, defendant below, appeals from a judgment and sentence for the crime of cruelty to animals following a non-jury trial. Without belaboring the point, we find that the lower court committed egregious error when it excluded from testimony evidence offered by the defendant relating to his state of mind, his intent and motive, his past relationship with animals and the customs and practice in his native country concerning treatment to animals in similiar situations. Although our research reveals no Florida case which directly involved this issue, we nevertheless believe that, in light of the authority cited herein, such evidence is

highly relevant and its exclusion is prejudicial.[1] *McGinnis v. State*, 541 SW 2d 431 (Tex. 1976); *State v. Buford*, 331 P.2d 1110 (N.Mex. 1958); *Miller v. State*, 63 So. 572 (Ga. 1909); *Hunt v. State*, 29 NE 933 (Ind. 1982); and *Rushin v. State*, 267 So.2d 473 (Ga. App. 1980).[2] Therefore, this cause must be reversed and remanded for a new trial.[3]

Q. The dogs that you have, are these dogs that you feed and take care of?

A. Oh, sure.

Q. Do you love these dogs?

MR. CAREY: I'm going to object to the relevancy of this.

THE COURT: Sustained.

MR. MIERTSCHIN: Judge, what I would like to do, is show the man is a human person. He cares for animals. He loves animals.

THE COURT: You can do this on mitigation, if he's found guilty, but that is not a defense.

MR. MIERTSCHIN: Well, Judge, I think a man's man of what he's doing—whether it's cruel, I think it goes to show the Court he's acting in a cruel manner or not.

If I can show the Court that what he was doing in the man's eyes was not a cruel thing—

THE COURT: Sir, what he thinks is cruel is not material. It's what the facts show was done.

It's up to the Court to determine whether there was a cruel manner or not. Some people may think a lot of things are not cruel, but that has no bearing on whether it is cruel or not.

MR. MIERTSCHIN: So I can't go into it, is that the ruling of the Court?

We also feel constrained to add that an examination of the record reveals that the conduct of the judge and the general atmosphere of the trial reveals a significant departure from what we perceive the nature of

---

[1] F.S. 828.12 (1981)

[2] The relevant portions of the trial transcript, pg. 16-30, reveal that despite the persistent efforts of the defense counsel to admit this evidence, the Court "sustained" objections on no less than thirteen occasions. The following excerpt is illustrative:

[3] We have reviewed the other points on appeal. We find there is sufficient evidence to present a prima facie case and thus reject the defense's argument for the judgement of acquittal. Cf. *Wilkerson v. State*, 401 So. 2d 1110 (Fla. 1981). The Defendant's points concerning the severity of the sentence are moot in light of the reversal of the judgment.

the judicial process should be.[4] Less any reader disparage our motive and intent, we do not sanction or approve any of the conduct of Victorien Theoret,[5] but we believe most frevently that any person accused of a crime, be he murderer, rapist, or feline garroter, should receive fair and equal treatment in the courts of this country. The chronology outlined herein are some, but not all, of the matters which give us considerable cause for concern. The following are comments made by the trial judge during the trial:

THE COURT: I will let you go into it on mitigation, if the Defendant is found guilty. But as to a defense, what he thinks is cruel or not cruel, has no bearing. It's not a defense. It's not a defense to what he's charged.

The whole basis of the charge is for the Court to determine from the facts as to whether he has violated the law, in the Court's opinion.

He's not the trier of the facts. I am the trier of the facts, and that's my whole obligation to determine.

What he may or may not think is not material. Otherwise, every defendant that comes before the Court might very well say the same thing.

"I didn't think that shooting that fellow in the head was murder." Or, "I didn't think it would be wrong for me to rape that woman." That's totally immaterial, what he thinks.

MR. MIERTSCHIN: Well, the facts are what—what were the acts before hand and what he thought. I think that's important.

THE COURT: Sir, the objection has been sustained.

"It's too bad I can't sentence you to twenty years in the State Penitentiary." "Sir, you are a disgrace to the human race for your barbaric and inhumane actions." During the sentencing phase, the judge added:

"He deserves five years in the State Penitentiary, and I just wish I had the authority to send him to the Penitentiary.

After making these observations, the trial judge then in rapid succession:

1. sentenced the Defendant to the maximum sentence of one year in the county jail;[6]

---

[4]Benjamin Cardoza, The Nature of the Judicial Process (1921).

[5]Indeed, we find it repugnant.

[6]Interestingly, the judge ordered a psychiatric evaluation after sentencing. An event which generally occurs prior to sentencing. Cf., F.R. Crim. P. 3.713(c).

2. refused a request for Pre-Sentence Investigation, albeit discretionary, F.R. Crim. P. 3.710.

3. ordered the Defendant to be incarcerated immediately;

4. refused to set a bond;

5. denied further pleas by counsel to permit the Defendant to return to his home to pick up medicine required by him for treatment of a heart condition.

The Defendant thereafter filed a Writ of Habeas Corpus and after two days and nights of incarceration, during which Theoret was removed to the county hospital facilities suffering from a heart ailment, the prisoner was released on bond by order of the Circuit Court.[7]

Now not all these matters would be so nearly disconcerting were it not for the fact that the Defendant was 64 years of age; had no prior criminal record (not one blemish); owned property in Dade County; and, was a university professor for 28 years with an excellent work record. Notwithstanding the nature of the alleged transgression, these factors are valid considerations for sentencing, but, as the very minimum, for the setting of a reasonable bond.[8] It is obvious that the trial judge chose to ignore all these factors on both issues.

In light of this record, we believe, upon remand, the lower court judge who presided over this case should recuse himself from any further involvement in these proceedings and a new judge substituted. There is ample authority for such action. *Deauville Realty Co. v. Tobin*, 120 So.2d 198, 202 (Fla. 3rd DCA 1960). *Keating v. Superior Ct.*, 45 Cal.2d 440, 289 P.2d 20d; and *Fla. Jur.2d* "Courts and Judges" 247. The case of *Anderson v. State*, 287 So.2d 322 (Fla. 1st DCA 1973), is very analogous. But, even if such precedent did not exist, fairness and justice would demand no less. The height of our concern is increased in this case because the issues were tried non-jury. In light of the trial judge's announced predelictions, we feel reversal of the judgment and sentence would serve little purpose if a new judge is not substituted.

We do not express these thoughts save after much consideration, as we believe the trial judge was earnest in his indignation over the Defendant's conduct. But, notwithstanding the sincerity of his motive, the judge above all others in our system of justice must be a prototype of neutrality and fairness. *Williams v. State*, 143 So.2d 484 (Fla. 1962);

---

[7]Parenthetically, it must be observed that the Defendant appeared voluntarily at all subsequent proceedings and there was no attempt at flight.

[8]F.R. Crim. P. 3.691 (and cases interpreting it).

*Marlin v. Williams*, 385 So.2d 1030 (Fla. 1st DCA 1981); and *State v. Revels*, 113 So.2d 218 (Fla. 1st DCA 1959). Otherwise, our system of justice simply fails. To paraphrase an apt maxim, "We must not only do justice, but we must appear to do justice." *Aetna Life & Casualty Company v. Thorn*, 329 So.2d 82, 83 (Fla. 3rd DCA 1974).[9] In this case, such an atmosphere can only be achieved by a new trial before an impartial and detached judge. *State v. Steele*, 348 So.2d 398 (Fla. 3rd DCA 1977).[10]

REVERSED AND REMANDED.

---

[9] "The attitude of the judge and the atmosphere of the courtroom should indeed be such that no matter what charge is lodged against a litigant or what cause he called to litigate, he can approach the bar with every assurance that he is in a forum where the judicial ermine is everything that it typifies, purity and justice. The guarantee of a fair and impartial trial can mean nothing less than this." *Hayslip v. Douglas*, 400 So.2d 553, 557 (Fla. 4th DCA 1981). quoting Justice Terrell, in *State ex rel Davis v. Parks*, 141 Fla. 516, 194 So. 615 (1939).

[10] In *State v. Steele*, the same trial judge as in the present case, was recused for similiar statements concerning the unavailability of defenses and his announced predelictions of guilt.